**E-FILED on** __10/12/2011__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>EVELYN SINENENG-SMITH,<br><br>    Defendant. | No. CR-10-00414 RMW<br><br>ORDER DENYING MOTION TO DISMISS COUNTS ONE THROUGH THREE, NINE, TEN, AND THE FORFEITURE ALLEGATIONS OF THE SUPERSEDING INDICTMENT<br><br>**[Re Docket No. 46]** |

Defendant Evelyn Sineneng-Smith moves to dismiss counts one through three, counts nine and ten, and the forfeiture allegations of the superseding indictment filed against her. The counts in question allege violations of 8 U.S.C. § 1324(a)(1)(A)(iv) and (B)(I), which impose criminal liability and penalties on any person who "encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of the law . . . ." For the reasons set forth below, the court denies the motion to dismiss.

/ / /

/ / /

ORDER DENYING MOTION TO DISMISS COUNTS ONE THROUGH THREE, NINE, TEN, AND THE FORFEITURE ALLEGATIONS OF THE SUPERSEDING INDICTMENT—No. CR-10-00414 RMW
MEC

## I. BACKGROUND[1]

From approximately 1990 to April 2008, defendant Evelyn Sineneng-Smith owned and operated an immigration consultation business located in San Jose, California, with additional offices in Beverly Hills, California, La Jolla, California, Las Vegas, Nevada, and New York, New York. Sineneng-Smith counseled foreign nationals on applying for and obtaining employment-based visas in order to enable them to work in the residential health care industry.

An alien can obtain an employment-based visa under United States immigration law from the Department of State by filing form I-485, Application to Register Permanent Residence or Adjust Status. Certain aliens are ineligible for adjustment of status. However, in 1994, Congress enacted Section 245(i) of the Immigration and Naturalization Act, known as the Legal Immigration Family Equity Act ("LIFE Act"), which permitted certain aliens who were otherwise ineligible for adjustment of status to pay a penalty in order to adjust their status without leaving the United States if the alien was the beneficiary of a qualifying immigrant visa petition or application for labor certification and met statutory and regulatory requirements before April 30, 2001. The relevant labor certification application, known as Form ETA-750, is filed with the United States Department of Labor ("USDOL") by the employer seeking to hire the alien. If the USDOL approves the form, an employer can apply on the alien's behalf to obtain a visa number and file an application with the United States Citizenship and Immigration Services ("USCIS") called the I-140, Petition for Alien Worker.

Counts one through three each allege that for the purpose of private financial gain, Sineneng-Smith encouraged or induced an alien to reside in the United States, knowing or in reckless disregard of the fact that such residence was in violation of the law. The indictment lists the initials of each alien, the date he or she entered into a retainer agreement with the defendant, and the admission number listed in Form I-94, the record of the alien's arrival into the United States.

The defendant is also charged with three counts of mail fraud. In support of those allegations, the superseding indictment alleges that Sineneng-Smith entered into retainer agreements

---

[1] Unless otherwise noted, background facts are taken from the superseding indictment.

with foreign nationals, most of whom entered the United States on visitor's visas from the Philippines, and their employers. The superseding indictment alleges that Sineneng-Smith fraudulently promoted USDOL's labor certification program as a way for foreign nationals to obtain a permanent resident employment-based visa, while knowing that foreign nationals who did not file petitions with USDOL or USCIS prior to April 30, 2001 would not be eligible to obtain employment-based visas. She charged $5,900 for the filing of an application for a foreign labor certification with USDOL and $900 for the filing of the I-140 Form with USCIS–filings that she allegedly knew were futile. Sineneng-Smith also allegedly knew that her clients had overstayed the amount of time they were allowed to be in the United States and worked illegally at various health care facilities.

## II. ANALYSIS

### A.    Motion to Dismiss

Under Rule 12(b) of the Federal Rules of Criminal Procedure, a party may file a motion to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). In considering a motion to dismiss, the court is limited to the face of the indictment and must accept the facts alleged in the indictment as true. *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1955).

### B.    The Scope of the Charged Statute

Section 1324(a)(1)(A) provides:

Bringing in and harboring certain aliens

(a) Criminal penalties.

>(1) (A) Any person who –
>. . . .
>>(iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of the law.

Section 1324(a)(1)(B)(I) sets the penalty when such conduct was done for commercial purposes or private financial gain.

The primary issue raised in the motion is whether defendant "encourage[d]" illegal aliens to continue to reside in the United States within the meaning of the statute by encouraging or inducing illegal aliens and their employers to pay her to pursue what she knew were hopeless applications for permanent residency. Defendant submitted no false information to USDOL or USCIS. A number of courts have considered the meaning of "encourages" under § 1324(a)(1)(A)(iv).

In *United States v. Oloyede*, 982 F.2d 133 (4th Cir. 1992), defendants had been convicted of a scheme to defraud the INS by falsifying documents for citizenship applications for illegal aliens already residing in the United States. Analyzing the meaning of "encourage" in a predecessor statute to § 1324(a)(1)(A)(iv), the court compared the language of that statute's predecessor statute, which had only proscribed conduct that encouraged "entry into the United States." It explained:

> IRCA [Immigration Reform and Control Act] worked a substantial expansion in the types of activities held criminal under this statute. IRCA's plain language distinguishes between these distinct categories of behavior and indicates that "encouraging" is not limited to bringing in, transporting or concealing illegal aliens. Rather, "encouraging" relates to actions taken to convince the illegal alien to come to this country or *to stay in this country*. Appellants' actions reassured their clients that they could continue to work in the United States, that they would not be subject to the threat of imminent detection and deportation, and that they could travel back to their homeland without risk of being prevented from returning, thus providing all the benefits of citizenship. The selling of fraudulent documents and immigration papers under these circumstances constitutes "encourages" as that word is used in the statute.

*Id.* at 137 (emphasis added).

In *United States v. Ndiaye*, 434 F.3d 1270, 1296 (11th Cir. 2006), the Eleventh Circuit held that the defendant had encouraged and induced an illegal alien to reside in the United States by helping him fraudulently obtain a Social Security number. The court explained that the defendant "may not have encouraged or induced an alien to come to or enter the United States, but a jury could have found that he encouraged or induced an alien . . . to reside in the United States, knowing it was in violation of the law. This violates the plain language of the statute."

Sineneng-Smith argues that her case is unlike *Oloyede*, *Ndiaye*, or other cases upholding convictions under the subject statute because she is not accused of helping aliens to obtain a benefits to which the aliens were not entitled. But the plain language of the statute imposes no requirement that the "encouragement" be accomplished through conduct that involves fraud against the United States. Here, the victims of defendant's alleged scheme were the aliens themselves. By suggesting to the aliens

ORDER DENYING MOTION TO DISMISS COUNTS ONE THROUGH THREE, NINE, TEN, AND THE FORFEITURE ALLEGATIONS OF THE SUPERSEDING INDICTMENT—No. CR-10-00414 RMW
MEC                                                             4

that the applications she would make on their behalf, in exchange for their payments, would allow them to eventually obtain legal permanent residency in the United States, Sineneng-Smith encouraged the aliens to remain in the country within the meaning of § 1324(a)(1)(A)(iv). Indeed, the fact that she is accused of defrauding the aliens themselves, as opposed to the federal government, more strongly supports the conclusion the Sineneng-Smith encouraged or induced the aliens to remain in the United States than if she had merely assisted the aliens in obtaining fraudulent documents. The promise of a path to legal permanent residency that Sineneng-Smith held out to the alleged victims of her scheme was plainly powerful encouragement to those aliens to set up a life in the United States.

Sineneng-Smith cites the unreported district court decision in *Hagar v. ABX Air, Inc.*, 2008 WL 819293 (S.D. Ohio Mar. 25, 2008) for the proposition that merely employing an illegal alien does not constitute "encourag[ing]" or "induc[ing]" an alien to reside in the United States in violation of § 1324(a)(1)(A)(iv). That court held that "at a minimum the defendant must take some affirmative act to assist an alien to enter or remain in the United States" and that allegations that the defendants knowingly hired unauthorized aliens did not allege affirmative conduct that constituted encouraging or inducing. *Id. Hagar* appears questionable to the extent that it implies that the statute requires that a person actually *assist* the alien as opposed to merely encouraging the alien. The fact that Sineneng-Smith may not have assisted her clients to remain in the United States does not mean that she did not wrongfully encourage or induce them to continue to reside in the United States. The facts alleged demonstrate that she did.

In addition, interpreting § 1324(a)(1)(A)(iv) to prohibit the conduct of which Sineneng-Smith is accused does not cause the statute to be impermissibly vague. "To satisfy due process, 'a penal statute [must] define the criminal offense [1] with such definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 130 S.Ct. 2896, 2927-27 (2010) (*quoting Koleder v. Lawson*, 461 U.S. 352, 357 (1983)). Sineneng-Smith argues that she is being prosecuted "for the simple act of being hired to provide immigration consultancy services to an unlawful alien." (Mot. at 14.) In fact, she is being prosecuted for allegedly fraudulently entering into retainer agreements by which she represented to illegal aliens that she would pursue a viable path to legal permanent residency on their

ORDER DENYING MOTION TO DISMISS COUNTS ONE THROUGH THREE, NINE, TEN, AND THE FORFEITURE ALLEGATIONS OF THE SUPERSEDING INDICTMENT—No. CR-10-00414 RMW
MEC                                                                 5

behalf, when she knew that the aliens she represented could not become legal permanent residents. As explained above, that conduct falls within the plain meaning of the statute, and an ordinary person would have understood that such conduct is prohibited. Defendant cites a number of cases involving the infamous honest services statute, 18 U.S.C. § 1346, but does not explain how 1324(a)(1)(A)(iv) resembles that statute in vagueness or novelty of application. The mere fact that there have been no prior cases directly on point does not mean that Sineneng-Smith did not have notice that her conduct was prohibited.

Similarly, Sineneng-Smith does not accurately describe the charges against her in her argument that she lacked notice because she relied on numerous USDOL and USCIS approvals of applications or that her First Amendment rights have been violated. She is not being prosecuted for making applications to the USDOL or USCIS. She is being prosecuted for allegedly entering into allegedly retainer agreements with illegal aliens, accepting payment from aliens and representing to aliens that her efforts would enable them to become legal permanent residents when she knew that they could not. That conduct, if proven, would be illegal under § 1324(a)(1)(A)(iv).

The parties agreed that the ruling on counts one through three dictate the outcome on counts nine and ten and the forfeiture allegations.

### III.  ORDER

For the foregoing reasons, the court denies defendant's motion.

DATED:     10/11/2011

RONALD M. WHYTE
United States District Judge

ORDER DENYING MOTION TO DISMISS COUNTS ONE THROUGH THREE, NINE, TEN, AND THE FORFEITURE ALLEGATIONS OF THE SUPERSEDING INDICTMENT—No. CR-10-00414 RMW
MEC                                                                6