1   MELINDA HAAG (CABN 132612)
    United States Attorney
2
    MIRANDA KANE (CABN 150630)
3   Chief, Criminal Division

4   PHILIP A. GUENTERT (CABN 147374)
    SUSAN KNIGHT (CABN 209013)
5   Assistant United States Attorneys

6      150 Almaden Blvd., Suite 900
       San Jose, California 95113
7      Telephone: (408) 535-5061
       FAX: (408) 535-5066
8      E-Mail:  Philip.Guentert@usdoj.gov
                Susan.Knight@usdoj.gov
9

10  Attorneys for the United States of America

11
                      UNITED STATES DISTRICT COURT
12
                   NORTHERN DISTRICT OF CALIFORNIA
13
                          SAN JOSE DIVISION
14

15  UNITED STATES OF AMERICA,          )    No.  CR 10-00414 RMW
                                       )
16          Plaintiff,                 )    **UNITED STATES' RESPONSE TO**
                                       )    **DEFENDANT'S MOTION FOR LEAVE**
17      v.                             )    **TO FILE A MOTION FOR**
                                       )    **RECONSIDERATION**
18  EVELYN SINENENG-SMITH,             )
                                       )    Hearing Date: May 9, 2013
19          Defendant.                 )    Time:        2:00 p.m.
                                       )    Courtroom:   Hon. Ronald M. Whyte
20  _____)

21

22  **I.  INTRODUCTION**

23      In an Order dated October 12, 2011, this Court denied the defendant's motion to dismiss

24  Counts One through Three of a Superseding Indictment, charging the defendant with violations

25  of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i), Counts Nine and Ten, charging money laundering

26  violations under 18 U.S.C. § 1957, and accompanying forfeiture allegations.  On March 28,

27  2013, the Court granted the government's motion to dismiss Counts Nine and Ten.  The

28  defendant now moves for leave to file a motion to reconsider the October 2011 order.  For the

1   reasons given below, the Court should deny such leave.

2   **II. ARGUMENT**

3       A. <u>Legal Standard for Leave to Reconsider</u>

4       The Criminal Local Rules are silent on the requirements or standards for motions to

5   reconsider.  According to Criminal Local Rule 2.1, "[t]he provisions of the Civil Local Rules of

6   the Court shall apply to criminal actions and proceedings, except where they may be inconsistent

7   with these criminal local rules, the Federal Rules of Criminal Procedure or provisions of law

8   specifically applicable to criminal cases." Civil Local Rule 7-9(b) states that:

9       A motion for leave to file a motion for reconsideration must be made in accordance with the
        [following] requirements. . . .  The moving party must specifically show:

10
11      (1) That at the time of the motion for leave, a material difference in fact or law exists
        from that which was presented to the Court before entry of the interlocutory order for
        which reconsideration is sought. The party also must show that in the exercise of
12      reasonable diligence the party applying for reconsideration did not know such fact or law
        at the time of the interlocutory order; or
13
14      (2) The emergence of new material facts or a change of law occurring after the time of
        such order; or
15      (3) A manifest failure by the Court to consider material facts or dispositive legal
        arguments which were presented to the Court before such interlocutory order.
16
17      The Ninth Circuit has held that reconsideration is appropriate if the district court: (1) is

18   presented with newly discovered evidence; (2) has committed clear error or the initial decision

19   was manifestly unjust; or (3) is presented with an intervening change in controlling law.  <u>See</u>

20   <u>Schl. Dist. No. 1J v. AcandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993).  There may be other highly

21   unusual circumstances that warrant reconsideration as well.  <u>See</u> <u>id</u>.

22      B. <u>Defendant's Citations to Grand Jury Testimony of Government Officials and Alien</u>
        <u>Employment Case, and Repetition of Argument in Motion to Dismiss, Do Not Provide a</u>
23      <u>Basis for the Court to Reconsider its Original Order</u>

24      It appears that the defendant is citing to at least two "material difference[s] in fact or law"

25   from the time of his original motion, both of which are found in the testimony of grand jury

26   witnesses–or, to be precise, one of which is the <u>omission</u> of something from the 2008 testimony

27   of a USCIS official, who, according to defense counsel, "does not assert . . . the fact" that an

28   //

U.S.' Response to Def.'s Mot. for Leave
CR 10-00414 RMW                 2

alien who overstays his or her visa can lawfully make applications for a labor certification.[1] Whether this witness mentioned that "fact," and whether it actually is a fact, neither that concept nor the witness's handling of it can make any possible difference to defendant's motion or provide any possible basis for a motion to reconsider.  As the Court noted when it first ruled on that motion, "[s]he is not being prosecuted for making applications to the USDOL or USCIS."  Order Denying Mot. to Dismiss, Oct. 12, 2011 at 6:10-11.

The other new "fact" is the statement by the case agent before the grand jury to the effect that defendant's business was legitimate before the sunset of the LIFE Act on April 30, 2001.[2]  That the defendant may have had clients before that date who could adjust their status through labor certification, or that there may have been a period of time when she was not breaking a particular immigration law, seems unexceptional.  Nothing about these concepts, or the case agent's statement about these concepts, affects the defendant's liability for the charged conduct or provides any possible basis for a motion to reconsider the court's previous ruling.[3]

---

[1]Under the Jencks Act, the government has no obligation to produce witness statements, including statements made by a witness before a grand jury, until after the witness has testified on direct.  However, in order to promote efficiency and in anticipation of a trial in March 2013, the government produced to the defendant the grand jury transcripts of Kurt Gooselaw, Associate Center Director of the USCIS's California Service Center, and ICE Special Agent Wendell Wright on approximately January 16, 2013 and February 12, 2013, respectively.

[2]The Court described the background of immigration laws applicable to this case in its original order, and the allegation that the defendant's U.S. clients who applied for labor certification after April 30, 2001, were not eligible to adjust their status thereby, and the government will not repeat that exposition here.

[3]The defendant also cites to one new case, Lamonica v. Safe Hurricane Shutters, Inc., 2013 U.S. App. LEXIS 4599 (11th Cir. 2013), a civil opinion issued in March of 2013 by the Eleventh Circuit Court of Appeals, which he may also be using as a basis for leave to file a motion to reconsider.  That opinion does not control any of the issues in this case. If it was meant as an example of a situation in which illegal aliens were provided legal process, presumably the case law is replete with instances that predate the defendant's initial motion: it is an unexceptional point, to say the least.  Defense counsel cannot possibly mean to suggest that he had searched for such a case, and had no success until Lamonica v. Safe Hurricane Shutters was handed down.  Defense counsel's "new law" itself cites a twenty-five-year-old case for the proposition he puts in his parenthetical.  By no stretch of the imagination is this a "material difference . . . in law that did not exist at the time of the filing of the order denying the motion" in the sense contemplated by local rule.  See Def. Mot. For Leave at 2: 20-22; 3:8-22.

1    With respect to these new "facts" defense counsel simply reargues that the defendant was

2    entitled to file labor petitions in the abstract, an argument for dismissal already rejected by the

3    court.  See Civil Local Rule 7-9(c) ("No motion for leave to file a motion for reconsideration

4    may repeat any oral or written argument made by the applying party in support of or in

5    opposition to the interlocutory order which the party now seeks to have reconsidered. Any party

6    who violates this restriction shall be subject to appropriate sanctions.")

        C.   The Superseding Indictment Is Sufficient Because It Follows the Language of the Statute
             and Pleads the Settled Elements of the Offense

8         Even if the Court were to –once again– address the merits of the defendant's motion to

9    dismiss, it should be denied.  An indictment must simply contain a plain and concise statement

10   identifying the essential facts constituting the offense charged. See Fed. R. Crim. P. 7(c)(1).

11   This liberal pleading standard is satisfied where an indictment sets forth the charged offense

12   using the words of the criminal statute itself.  See Hamling v. United States, 418 U.S. 87, 117

13   (1974) and  United States v. Davis, 336 F.3d 920, 922 (9th Cir. 2003) ("In cases where the

14   indictment tracks the words of the statute charging the offense, the indictment will be held

15   sufficient so long as the words unambiguously set forth all elements necessary to constitute the

16   offense.").  At no point in his brief does defense counsel make the claim that the superseding

17   indictment does not track the language of the charged statute.

18        Instead, the defendant invites the Court to try the case on the papers, without a jury.  The

19   defense claims that the "charges . . . are predicated solely on the hiring of the defendant [and] not

20   any work she did. . . ."  Def.'s Mot. For Leave at 3:4-5 (emphasis added).  In fact, the evidence at

21   trial will include the defendant's understanding of the circumstances of her clients' presence in

22   the country and their objectives; the defendant's understanding of the immigration process,

23   including the futility of an application for a labor certification for those clients; the defendant's

24   conduct, including what she said, and did not say, to her clients; the client's own understanding

25   of his or her situation; and the purpose and effect of the defendant's conduct–that is, her

26   inducement of her clients to maintain their presence and employment in the United States, which

28

was illegal, but also extremely profitable for the defendant, and the success of that inducement.

To the extent that the defendant is implying that its proof is limited to the four corners of a contract signed on a certain date, the government rejects that limitation as groundless, and to the extent that the defense is basing his motion upon a prediction about the proof to be adduced, the government rejects that argument as premature. "There is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence." United States v. Critzer, 951 F.2d 306, 307 (11th Cir.1992) (per curiam) (quoted in U.S. v. Blanton, 476 F.3d 767, 771 (9th Cir. 2007) and U.S. v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

There was no "failure" or "injustice," "manifest" or otherwise by the Court in its initial order, nor did it commit any error, "clear" or otherwise, in its reasoning.  The defendant appears to want the trial to be about whether or not an alien can lawfully petition for a labor certification, but that is not the legal issue presented by these charges, and not what the government's case will comprise.  The evidence at trial will show that the defendant's clientele after 2001 generally (and the three clients named in Counts One through Three in particular) were present in the United States illegally.  Further, as the defendant well knew, her clients were simply not eligible to adjust their legal status through the labor certification process she touted to allow them to live and work in the United States legally.  Nothing she did for these clients rectified their illegal presence or illegal employment in the United States or vindicated any other legal right they possessed.  But her efforts certainly prolonged both illegal presence and illegal employment, while enriching the defendant at the same time.

Defense counsel continues to assert that there was some benefit to the labor certification for these clients, even after the demise of the LIFE Act.  In fact, the evidence at trial will show that by encouraging her clients to stay on without legal status, the defendant caused them a significant harm.  It is clear that these clients would be debarred by law from returning to the United States for a period of years if and when they departed  – voluntarily or involuntarily. These clients would then be foreclosed from pursuing the legal (and extraterritorial) avenue to permanent residence and lawful employment through labor certification, as described below.  In

1    any event, whether the aliens benefitted from the conduct of the defendant is certainly not an

2    element of Section 1324, and the defendant cites no case to the contrary.

3        Likewise, the illegality of her conduct does not depend on whether she deceived her clients

4    as alleged in the fraud counts, and her conviction on Counts One through Three is not foreclosed

5    even if they were witting in the charade.  Defense counsel is now basing his claim for a dismissal

6    on the fact that the Court's order references allegations outside the counts he was seeking to

7    dismiss.  As an initial matter, a court considering a motion to dismiss is obliged to consider the

8    indictment as a whole when scrutinizing a claim that any one count is deficient in its allegation

9    of the requisite elements of an offense.  See U.S. v. Villarreal, 707 F.3d 942, 957-958 (8th Cir.

10   2013); U.S. v. Moore, 563 F.3d 583, 585-6 (7th Cir. 2009).

11       Furthermore, it was defense counsel who insisted in his first motion on looking to the

12   superseding indictment in its entirety to make his argument about Counts One through Three,

13   and further to look to what he purported would be the evidence of his client's conduct viewed in

14   its entirety.[4]  This Court in response noted what the superseding indictment alleged generally,

15   and what those allegations suggested about the evidence to be expected concerning the

16   defendant's conduct: that the defendant also committed a fraud on the clients, as distinguished

17   from the defendant's theory of the charged case.

18

19

---

20       [4]For example, the section of the defense's original motion to dismiss Counts One through
     Three entitled "The Relevant Allegations of the Superseding Indictment" relies on the
21   allegations found in the fraud counts.  He followed this with statistics detailing the defendant's
     track record in securing approvals of labor certifications, petitions for alien workers, and green
22   cards. (Not a single instance of a labor-certification client receiving a green card will be found
     among those clients at issue in this case, that is those applying after April 30, 2001.  The simple
23   reason for that is those clients were not eligible to adjust their status, even if they were able to go
     through the motions of making an application for a labor certification.)  The defendant goes on to
24   claim that she received "numerous USDOL and USCIS approvals for her clients which she could
     reasonably rely upon as continued confirmation that her immigration consultancy business was
25   lawful."  Def. Mot. To Dismiss Counts 1-3, 9-10, and the Forfeiture Allegations of the
     Superseding Indictment, Aug. 10, 2011 at 18:11-13.  She further claimed that these approvals
26   came both before and after the search warrant on her business.  See id. at 19:19-25.  These facts
     are either not found in Counts One through Three or not found in the superseding indictment at
27   all.

28

1    In any event, this does not mean that fraud is an element of a Section 1324 offense.[5]  There

2    are no cases holding that any of the aggravating factors present here - i.e. deception, harm, or

3    anything else - constitute an additional element of proof required for conviction under Section

4    1324, even if those factors may have been found among the government's evidence in other

5    cases cited by the defendant in her original motion.  As the Eleventh Circuit Court of Appeals

6    noted, when analyzing the contours of liability under Section 1324(a)(i)(A)(iii), "A holding that

7    X + Y is enough to violate a provision does not mean that X alone is not enough." Edwards v.

8    Prime, Inc. 602 F.3d 1276, 1298-99 (11th Cir. 2010) ("The statutory evolution of §

9    1324(a)(i)(A)(iii) indicates that knowingly or recklessly hiring illegal aliens probably is enough

10   by itself to constitute concealing, harboring, or shielding from detection for purposes of the

11   statute.").

12       Even by the defendant's lights, this case should pass muster.  In the original motion to

13   dismiss, defendant noted that "[r]eported cases involving a charge of encouraging or inducing an

14   alien to reside in the U.S. have all involved an element of the defendant seeking to obtain a

15   benefit (i.e., a Social Security card) for which the defendant was not entitled."  Def. Mot. To

16   Dismiss, Aug. 10, 2011 at 8:22-24.  As the government stated in its response, the aliens in this

17   case, through the ministrations of the defendant, also sought a benefit to which (as she well

18   knew) they were not entitled–to live and work in the United States legally through the labor

19   certification process.  See U.S.' Opp. to Def. Mot. to Dismiss, Sept. 12, 2011 at 7:17-18.

20       It is also important to note that none of the published cases cited by the defendant, then or

21   now, deals with the sufficiency of an indictment charging a Section 1324 offense; they address

22   whether the evidence adduced at trial was sufficient to support a jury's conclusion that a

23

24   ────────────────

25   [5]To be sure, the government expects the evidence at trial to show the defendant worked a
     fraud on her clients.  There will be testimony that they understood the defendant was pursuing a
26   process that would allow them, upon the filing for an application for labor certification on their
     behalf, to live and work legally in the United States.  At no point did the defendant or her
27   employees explain that the clients were not eligible to adjust their immigration status while
     remaining in the country illegally, the opaque reference to congressional action in the fine print
28   notwithstanding.  The fraud, of course, contributed to their decision to remain in the country and
     work without legal authorization.

U.S.' Response to Def.'s Mot. for Leave

1    defendant "encouraged" an alien to remain in the United States illegally.[6]  Any claim that the

2    defendant now raises that implied elements grafted onto Section 1324 constitute some sort of

3    variance from the superseding indictment is beside the point, because there is no authority or

4    logic for creating an additional element, whether it is one concerning fraud or something else.  If

5    and when the time comes for the Court to rule upon a defense motion concerning the sufficiency

6    of the evidence of "encouraging and inducing," the government expects that evidence will prove

7    to be more than enough–and the evidence available to the court at that time, besides the fact that

8    the clients were ineligible to live and work lawfully in the United States through labor

9    certification, could include that they were defrauded and otherwise harmed by the defendant in

10   the process.

11       Her parade of horribles notwithstanding, see Def. Motion at 3:14-18, the defendant's

12   conviction would not put, say, attorneys representing aliens in court at risk.  In this case, the

13   evidence at trial, as alleged, will show that defendant "encouraged and induced" aliens to remain

14   in the United States illegally through her marketing of a program that, while lucrative for her,

15   was legally useless to them.  The only practical result was to generate a passel of paperwork,

16   including "Prayers for Leniency," and a veneer of legitimacy that would cause her clients to

17   believe that a USCIS agent encountering someone in possession of these documents would

18   decline to start deportation proceedings.  This is not a result that the government has to

19   countenance.

20       The lawful alternative for defendant's clients, after April 30, 2001, was to leave the United

21   States, to return to the Philippines, and then apply for labor certification for the purpose of

22   obtaining a visa allowing them to enter the United States and work legally–what is known as

23   "consular processing."  But this lawful process did not suit the financial interest of the

_____

25       [6]Defense counsel does cite to an unpublished district court opinion in a civil matter for
26   the proposition that mere employment of an alien does not constitute encouraging or inducing an
     alien to reside in the United States under Section 1324(a)(1)(A)(vi) without an additional
27   affirmative act.  Hager v. ABX Air, Inc., 2008 WL 819293 (S.D. Ohio 2008).  This is hardly
     controlling authority for this case, which is factually distinct, and its reasoning is not consistent
28   with the later appellate case, Edwards v. Prime, Inc., supra, at 1294-96, which defendant also
     cites.

defendant–the proof of which, at trial, will subject her to an enhanced penalty–or that of the employers upon whom she depended for her flow of clients.  So she did the opposite: she encouraged those aliens to stay, illegally, to pursue a fruitless course, and to pay her extravagant fees in the process.  This is more than enough to constitute unlawful "encouraging and inducing" under Section 1324 without raising any constitutional infirmities for the statute on its face or as applied to the defendant.

## III.     CONCLUSION

For all of the aforementioned reasons, the defendant's motion for leave to file a motion to reconsider should be denied.  The superseding indictment is well-pled, tracking the language of the statute, and the defendant is not entitled to any further relief based on her view of the evidence in advance of trial.

The defendant's motion was styled as one for leave to file a motion of reconsideration of the order denying dismissal of counts.  In the event that defense counsel further develops the substance of his grounds for reconsideration in his reply to this memorandum, or addresses issues outside the scope of his initial motion for leave, the government respectfully requests the opportunity to seek leave from the Court to file a surreply to address those additional arguments and issues.

DATED: 5/2/13                                   Respectfully submitted,

                                                MELINDA HAAG
                                                United States Attorney


                                                _____/s/_____
                                                PHILIP A. GUENTERT
                                                SUSAN KNIGHT
                                                Assistant United States Attorneys