1

2

3

4                                                          **E-FILED on**   6/14/13

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   UNITED STATES OF AMERICA,              No. C-10-00414 RMW

13                 Plaintiff,

                                            RULINGS ON DEFENDANT'S MOTIONS *IN*
14         v.                               *LIMINE* I - IV

15   EVELYN SINENENG-SMITH,

16                 Defendant.

17

18   **Defendant's *In Limine* Motions**

19         This order addresses defendant's motions in limine in Parts I - IV of the Memorandum in

20   Support of Defendant's Motions *In Limine* at Dkt. No. 125.

21
           **I.     To Exclude Evidence of Mail Fraud Based on a "Scheme Mail Fraud Theory**"
22
           Denied.  The mail fraud statute provides, in relevant part:
23
           Whoever, having devised or intending to devise any scheme or artifice *to*
24         *defraud* [("scheme mail fraud theory")], or *for obtaining money or property by means*
           *of false or fraudulent pretenses, representations, or promises* [("false pretenses mail
25         fraud theory")] . . . for the purposes of executing such scheme or artifice or
           attempting to do so, places in any post office or authorized depository for mail matter,
26         any matter or thing whatever to be sent or delivered by the Postal Service shall be
           fined under this title or imprisoned not more than 20 years, or both.
27
28   18 U.S.C. § 1341. The defendant relies on *United States v. Halbert* for the proposition that the

     scheme mail fraud theory and the false pretenses mail fraud theory "constitute independent grounds

**United States District Court**
For the Northern District of California

1   for conviction of mail fraud." 640 F.2d 1000, 1007 (9th Cir. 1981). In *McNally v. United States*,

2   however, the Supreme Court "rejected that construction of the statute, instead concluding that the

3   second phrase simply modifies the first by 'ma[king] it unmistakable that the statute reached false

4   promises and misrepresentations as to the future as well as other frauds involving money or

5   property.'" *Cleveland v. United States*, 531 U.S. 12, 25-26 (2000) (quoting *McNally*, 483 U.S. 350,

6   358 (1987) (superseded by statute on other grounds)). Under either reading, however (i.e., reading

7   the statute such that the second phrase modifies the first or as two separate theories), it is abundantly

8   clear that the government's "false pretenses" mail fraud theory is required to be, and is, based on the

9   existence of *a scheme*. *See* 18 U.S.C. § 1341 (both the first and second clauses italicized above

10  modify the subject—"any scheme or artifice"—and thus both require proof of a scheme or artifice);

11  *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (The first "component[] to a violation of

12  the mail fraud statute [is]: '(1) the devising of *a scheme or artifice* either (a) *to defraud* or (b) *for*

13  *obtaining money by means of false or fraudulent pretenses, representations, or promises* . . . .'"

14  (emphasis added, citation omitted)); *United States v. Cronic*, 900 F.2d 1511, 1513 (10th Cir. 1990)

15  ("Although largely overlapping, *a scheme to defraud*, and *a scheme to obtain money by means of*

16  *false or fraudulent pretenses, representations, or promises*, are separate offenses" (emphasis

17  added)).

18          Although *Halbert* does refer to the scheme mail fraud theory and the false pretenses mail

19  fraud theory as "constitut[ing] independent grounds for conviction of mail fraud," the case does not

20  support defendant's theory that in the instant case the government is precluded from proving a

21  scheme involving defrauding or making false representations to foreign nationals who are illegally

22  in the United States. 640 F.2d at 1007. In *Halbert* the district judge did not instruct the jury on the

23  requirement that the several misrepresentations alleged had to be material. The Ninth Circuit held

24  that the evidence showed that the misrepresentations were material so there was no error. *Id.* It also

25  pointed out that a defendant's activities can be a scheme or artifice to defraud whether or not any

26  specific misrepresentations are involved. *Id.*

27          Defendant argues that the indictment only charges mail fraud under the false pretenses

28  theory. Accordingly, defendant asserts that there is no scheme liability at issue, and thus the

**United States District Court**
For the Northern District of California

evidence of defendant's accused scheme outside of the three specific mailings charged is either irrelevant or overly prejudicial.  Under the statute itself, however, as explained above, false pretenses mail fraud liability *is* a type of scheme liability.  *See id.*  The language of the indictment simply mirrors the statute: "the defendant, having devised and intending to *devise a scheme and artifice to* [1] *defraud* and [2] *obtain money by means of materially false and fraudulent pretenses, representations, and promises* . . . knowingly deposited and caused to be deposited to be sent and delivered by the United States Postal Services the following documents: [lists three documents as counts 4-6]."  Indictment ¶ 15, Dkt. No. 6.  Although counts 4-6 are based on three specific mailings, the evidence going towards the scheme's existence is relevant and admissible to show the prerequisite scheme under § 1341.

The court sees no reason to limit the "scheme" evidence as the defendant requests to the three specific mailings charged in the Indictment.  The Indictment is clear that the alleged scheme began in April 30, 2001 (when foreign nationals became ineligible to adjust their status, i.e., obtain a green card by way of obtaining an employment based immigrant visa and remaining in the U.S.).  Indictment ¶ 13.  The government submits that the alleged scheme came to an end on April 16, 2008, the day that the search warrant was executed and defendant's records were seized.  Tr. 25:10-15.[1]  The defense contends that the government could have alleged a scheme to defraud that ended April 16, 2008 but did not do so.[2]  Tr. 20:1-5.  Although the mail fraud counts are based on three specific mailings, those specific mailings are *in furtherance of the alleged scheme*, which the court concludes extended from April 30, 2001 through April 16, 2008.

Because the defendant's motions in limine under Part I are all based on the erroneous premise that the scheme is not relevant to establish liability for the three specific counts charged, the court DENIES defendant's motions in limine under Part I.[3]

---

[1]  The Tr. citations are to the reporter's rough draft of the motion in limine hearing on June 10, 2013.

[2]  The defendant contends that, based on counts 4-6, the scheme is still necessarily limited to the three specific mailings, which occurred on December 2, 2005, July 12, 2007, and October 22, 2007 respectively.

[3]  The government agreed at the hearing that it would not offer Exhibit 75, the complete set of retainer agreements, into evidence.  Tr. 32:24-33:3.

**United States District Court**
For the Northern District of California

II.     **To Exclude Exhibits 81-82 and 86-87 Because the Recordings are not Complete and the "Draft" Transcripts are not Accurate**

Denied.  Defendant seeks to exclude audio video recordings (and the transcripts thereof) of two meetings that took place with defendant and cooperating witness Oliver Galupo and ICE Special Agent Ramelb on September 8, 2006 and August 22, 2007 respectively on the grounds that they are "incomplete," they do not start at the beginning and end at the end, and "substantial portions" are inaudible.  Defendant also foresees potential disputes regarding the accuracy of the translation of the Tagalog language portions of the recordings (although defendant points to no specific inaccuracies).

The government responded by explaining that it would call Mr. Galupo and ICE Special Agent Ramelb, who are both fluent in Tagalog and were both present at the respective meetings, to testify that the recordings and transcriptions are accurate.  With respect to the alleged incompleteness and inaudible portions of the recordings, the defense contends that despite "a few inaudible words and pauses in both recordings . . . the recordings are capable of being understood by the jurors," arguing that if the deficiencies were as serious as the defendant says, the translators would not have been able produce the present transcripts.

Under Ninth Circuit law, "[a] recorded conversation is generally admissible unless the unintelligible portions are so substantial that the recording as a whole is untrustworthy.  'The admissibility of a recorded conversation is addressed to the sound discretion of the trial judge.'" *United States v. Lane*, 514 F.2d 22, 27 (9th Cir. 1975) (quoting *Cape v. United States*, 283 F.2d 430, 435 (9th Cir. 1960)).  Having reviewed the tapes, the court finds that, although the audio is somewhat fuzzy (especially with respect to the August 22, 2007 tape), each tape contains complete, audible recordings of the vast majority of defendant's statements.  The fact that the recordings do not start at the beginning nor end at the end does not make the audible portions of the recordings untrustworthy assuming Special Agent Ramelb and Mr. Galupo sufficiently authenticate the recordings at trial.  The defense may cross-examine Special Agent Ramelb and Mr. Galupo with respect to any non-recorded portions of their respective meetings with defendant.  Unless there is a

1    dispute as to the accuracy of the translation,[4] the court DENIES the defendant's motion in limine to

2    exclude these tapes and transcripts.

3        **III.    To Limit Counts 1-3 Evidence Regarding Galupo, Guillermo, and H. Esteban to the Charged Date of Hiring**

4

5        Denied.  Defendant seeks to limit the evidence with respect to counts 1-3 (encouraging or

6    inducing three specific foreign nationals to reside in the United States) to the specific date of

7    defendants' retainer agreement with each particular client.  The only authority defendant points to

8    for so limiting the evidence is the Indictment itself, which in paragraph 9, states that the crime took

9    place "on or about the dates set forth below," which are the dates of each retainer agreement.

10   Although the Indictment charges that the encouragement or inducement was complete on the date of

11   the particular retainer, the defendant's relationship with the respective clients continued over a

12   period of time.  Evidence of defendant's continued encouragement or inducement of the *specific*

13   *clients charged* in the counts is relevant if it tends to prove acts consistent with the alleged

14   inducement or encouragement such as showing that the inducement or encouragement was carried

15   out.  Accordingly, the court DENIES defendant's motion in limine to limit the evidence under counts

16   1-3 to conduct or statements occurring on or before the dates of the specific retainer agreements.  To

17   the extent the evidence of defendant's later acts does not relate to the specific clients charged

18   (Galupo, Guillermo, or H. Esteban), however, a limiting may be appropriate limiting consideration

19   of that evidence only with respect to the mail fraud scheme alleged in counts 4-6, as discussed in

20   Part I *supra*.  No scheme is alleged as to counts 1-3.

21       **IV.    To Limit Counts 4-6 Evidence Regarding Galupo, Guillermo, and H. Esteban to the Charged Date of Hiring, Representations Made on That Date, and on or Before the Date of the Charged Mailings**

22

23       Denied.  Defendant contends that the mail fraud offense was complete on the date of mailing

24   and thus all evidence from dates subsequent to the three mailings should be barred as irrelevant or

25   overly prejudicial.  For the same reasons discussed in Part I *supra*, the evidence from dates

26   _____

27   [4]  Following the motion, the government recently submitted to the court edited recordings and its
     final transcripts of the recordings.  The parties indicated that they have independently resolved any
     issues with respect to edited Exhibits 86 and 87.  The defense has not currently alleged any
28   inaccuracy in the translation with respect to Exhibit 82, however the defense certainly may review
     the final transcripts and bring any specific issue with the accuracy of a specific statement or
     translation in the transcript to the court's attention.

United States District Court
For the Northern District of California

subsequent to the mailings is relevant and admissible to prove the requisite scheme under 18 U.S.C. § 1341. Accordingly, the court DENIES this motion in limine.

DATED:     June 14, 2013

RONALD M. WHYTE
United States District Judge