KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
DANIEL F. COOK (State Bar No. 70484)
dcook@kasowitz.com
Lyn R. Agre (State Bar No. 178218)
lagre@kasowitz.com
101 California Street, Suite 2300
San Francisco, CA 94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

Counsel for Defendant
EVELYN SINENENG-SMITH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>     vs.<br><br>EVELYN SINENENG-SMITH,<br><br>       Defendant. | Case No:  CR-10-00414-RMW<br><br>DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD VARIANCE, AND OBJECTIONS TO FINAL PRESENTENCE REPORT<br><br>Date:           December 14, 2015<br>Time:          9:00 a.m. |

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## <u>TABLE OF CONTENTS</u>

Page

Table of Authorities ................................................................................................. iii

INTRODUCTION ...................................................................................................... 1

I.      MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM .... 2

    A.      This Court Clearly Has The Authority To Grant A Downward Variance
From The Applicable Guidelines Range ...................................................... 2

    B.      This Court Should Grant A Downward Variance From The Guidelines
Range Under The §3553(a) Factors ............................................................. 3

        1.      The Nature And Circumstances Of The Offense And The History
And Characteristics Of The Defendant ........................................... 3

            a.      The Tax Counts – Counts 7 And 8 .................................... 3

            b.      The Immigration Counts – Counts 2 And 3 ...................... 4

            c.      The Mail Fraud Counts – Counts 5 And 6 ....................... 6

            d.      History And Characteristics Of The Defendant ............... 7

        2.      The Need For The Sentence Imposed To Reflect The Seriousness Of
The Offense, To Promote Respect For The Law, And To Provide
Just Punishment For The Offense .................................................... 9

        3.      Adequate Deterrence For Criminal Conduct And To Protect The
Public From Further Crimes By The Defendant ........................... 14

        4.      The Need To Provide The Defendant With Needed Educational Or
Vocational Training, Medical Care, Or Other Correctional
Treatment In The Most Effective Manner ..................................... 14

        5.      The Kinds Of Sentences Available And Sentencing Range
Established For The Applicable Offense Category And Criminal
History ............................................................................................ 15

        6.      Any Pertinent Guidelines Policy Statement ................................. 16

        7.      The Need To Avoid Unwarranted Sentencing Disparities ........... 16

        8.      The Need To Provide Restitution To The Victims Of The Offense .......... 16

        9.      The §3553 Factors And Unique Facts And Circumstances Of This
Case Warrant The Proposed Downward Variance To A Probationary
Sentence ......................................................................................... 17

II.     OBJECTIONS TO THE PSR ....................................................................... 18

    Paragraphs 2 And 4 ..................................................................................... 18

i

Paragraphs 9 - 16 And 18 ................................................................................ 19

    Paragraphs 9-13 ............................................................................ 19

    Paragraph 14 ................................................................................. 19

    Paragraph 15 ................................................................................. 20

    Paragraph 16 ................................................................................. 20

CONCLUSION ................................................................................................ 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

DEFENDANT'S SENTENCING MEMORANDUM      Case No. CR-10-00414-RMW

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Gall v. United States*,
552 U.S. 38 (2007) ................................................................................................. 2, 9

*Kimbrough v. United States*,
552 U.S. 85 (2007) ....................................................................................................... 2

*Rita v. United States*,
551 U.S. 338 (2007) ...................................................................................................... 2

*United States v. Booker*,
543 U.S. 220 (2005) ...................................................................................................... 2

*United States v. Carter*,
538 F.3d 784 (7th Cir. 2008) ...................................................................................... 12

*United States v. Dibe*,
___ F.3d ___, 2015 U.S. App. LEXIS 2247 (9th Cir. 2015) ....................................... 2

*United States v. Edwards*,
595 F.3d 1004 (9th Cir. 2009)................................................................................ 10, 11

*United States v. McCarty*,
520 F.3d 984 (9th Cir. 2008) (en banc) ....................................................................... 2

*United States v. Ruff*,
535 F.3d 999 (9th Cir. 2008)....................................................................................... 11

*United States v. Tomko*,
562 F.3d 558 (3rd Cir. 2009) (en banc)...................................................................... 11

*United States v. Whitehead*,
532 F.3d 991 (9th Cir. 2008).................................................................................... 9, 10

**Federal Rules**

F.R.Crim.P.
Rule 29 ................................................................................................................... 6, 18

F.R.Crim.P.
Rule 32(i)(3)(B)............................................................................................................ 18

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

DEFENDANT'S SENTENCING MEMORANDUM                    Case No. CR-10-00414-RMW

**Federal Statutes**

8 U.S.C.
     § 1324(a)(1)(A)(iv) ........................................................................... *passim*

18 U.S.C.
     § 3551(a) ...................................................................................... 10, 11
     § 3553 ............................................................................................ 16, 17
     § 3553(a) ........................................................................................ *passim*
     § 3553(a)(1) & (2) ............................................................................ 3
     § 3561(c)(1) ..................................................................................... 15
     § 3563(a)(2) ..................................................................................... 15

**Other Authorities**

1 N. Cohen, The Law of Probation and Parole (2d ed. 1999) ...................... 9

**U.S. Sentencing Guidelines**

§3E1.1 ................................................................................................ 13

§5B1.1(a)(2) ....................................................................................... 1, 17

§5C1.1(c)(3) ....................................................................................... 1, 17

§5H1.1 ................................................................................................ 15

§5H1.4 ................................................................................................ 15

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

iv

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

# INTRODUCTION

Defendant Evelyn Sineneng-Smith submits this sentencing memorandum and motion for downward variance ("memorandum") - with (1) a private presentence report by sentencing specialist and former probation officer Dayle C. Carlson, Jr. ("Carlson Report") attached as Exhibit 1; (2) a letter to this Court from Ms. Sineneng-Smith attached as Exhibit 2; and (3) other letters to this Court in support of Ms. Sineneng-Smith attached as a collective Exhibit 3. This memorandum also contains, in Section II, defense objections to the final presentence report ("PSR") prepared for the December 14, 2015 sentencing hearing.

As discussed below, the Guidelines calculations in the PSR based upon the convictions here – by jury trial on the immigration and fraud counts and by guilty pleas on the tax counts – are not disputed by the defense.[1] Those PSR calculations, factoring in a three-level downward adjustment for acceptance of responsibility - result in a total offense level 18, with a sentencing range of 27-33 months of imprisonment. Through this memorandum, the defense seeks a downward variance from that sentencing range – to a five year probationary sentence with a condition of substantial period of home confinement and a substantial amount of community service, full restitution to the IRS for the tax loss and $43,550 for the fraud offenses, and a substantial fine. In practical effect, the sought downward variance would be from a total offense level 18 to a level 11, where the Guidelines expressly permit a probationary sentence with a condition of home confinement for offenses in Zone B of the Sentencing Table. Guidelines §5B1.1(a)(2); §5C1.1(c)(3). The legal and factual bases for this Court granting such a discretionary downward variance are set forth below and will be further addressed by the defense at sentencing.

---

[1] As the PSR Guidelines calculations are not disputed by the defense, this memorandum need not go through a detailed Guidelines calculation analysis. It is anticipated that the government also will not be contesting the PRS Guidelines calculations.

DEFENDANT'S SENTENCING MEMORANDUM                    Case No. CR-10-00414-RMW

# I.    MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM

## A.    This Court Clearly Has The Authority To Grant A Downward Variance From The Applicable Guidelines Range

This Court clearly has the authority to grant a downward variance from a sentencing range based upon the total offense level properly calculated under the Guidelines.  The Guidelines are advisory only and serve as one factor among several that district courts must consider in determining an appropriate sentence.  *E.g., Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Booker*, 543 U.S. 220, 259 (2005), *United States v. McCarty*, 520 F.3d 984, 988 (9th Cir. 2008) (en banc).  As recently summarized in *United States v. Dibe*, ___ F.3d ___, 2015 U.S. App. LEXIS 2247 at 12-13 (9th Cir. 2015):

> In making the Guidelines advisory instead of mandatory, Booker did not affect the scope of the § 3553(a) sentencing factors. See *Id.* at 259 ("Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." (citing 18 U.S.C. § 3553(a))). Sentencing courts, in other words, no doubt have greater discretion post-Booker, but that discretion is still tied to the § 3553(a) statutory sentencing factors.  See Kimbrough v. United States, 552 U.S. 85, 101, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007) ("Booker permits the court to tailor the sentence in light of other statutory concerns as well.") (emphasis added) (internal quotation marks omitted); see also Pepper v. United States, 562 U.S. 476, 131 S. Ct. 1229, 1241, 179 L. Ed. 2d 196 (2011) ("[D]istrict courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a) . . . .").

As the Supreme Court outlined in *Gall v. United States*, 552 U.S. 38, 49-50 (2007), citing guidance found in *Rita v. United States*, 551 U.S. 338 (2007):

> As we explained in *Rita*, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  See 551 U.S., at 347-348, 127 S. Ct. 2456 at 2480, 168 L. Ed. 2d 203.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.  The Guidelines are not the only consideration, however.  Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.[6]  In so doing, he may not presume that the Guidelines range is reasonable. See *Id.*, at 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203. He must make an individualized assessment based on the facts presented.  If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.  After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.  *Id.*, at 356-58, 127 S. Ct. 2456, 168 L. Ed. 2d 203.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

DEFENDANT'S SENTENCING MEMORANDUM                    Case No. CR-10-00414-RMW

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

[6] Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including: "the need for the sentence imposed-- "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; "(B) to afford adequate deterrence to criminal conduct; "(C) to protect the public from further crimes of the defendant; and "(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2). The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victim," § 3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. § 3553(a) (2000 ed., Supp. V). The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

Under the summary discussion above, it is clear that the general directive of §3553(a) is that a court should impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in §3553(a). The court must consider, in imposing sentence, the factors found in §3553(a)(1) & (2). Thus, it is clear that any downward variance, as sought herein, must focus on the application of the factors found in §3553(a). It is to that issue this memorandum now turns.

**B.     This Court Should Grant A Downward Variance From The Guidelines Range Under The §3553(a) Factors**

       **1.     The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant**

              **a.     The Tax Counts – Counts 7 And 8**

As to the tax counts, Ms. Sineneng-Smith pleaded guilty to Counts 7 and 8, charging false statements in her tax returns for 2002 and 2003, and has admitted substantially and falsely underreporting her income for tax purposes for those two years and doing so knowingly and willfully. Ms. Sineneng-Smith admitted the following facts when entering guilty pleas to the tax counts:

For each of the tax years 2002 and 2003, I signed, under penalty of perjury, my United States Individual Income Tax Return prepared by my accountant. At the time that I signed each return, I operated an immigration consultation business,

3

and most of the income listed on my return came from payments by my clients. I deposited the payments into various bank accounts.  When I submitted my financial materials to my accountant for each of the two tax years for her to prepare my personal tax returns, I gave her only some, but not all, of the financial records showing only some, but not all of my gross income from my immigration consultancy business for each respective tax year.  I also did not inform her about this additional gross income for each tax year.  The financial information I gave my accountant for each of these two tax years materially understated my gross business income from my immigration consultancy business for each tax year. When I mailed each tax return to the IRS, I knew that each return was not true and correct as to the amount of gross receipts reported on the return so that I would be paying less income taxes to the IRS than I actually owed.  I knew at the time I mailed the returns that this was against the law.

Her attached letter to this Court (Exhibit 2) further addresses her contrition for committing the two tax offenses.

**b.       The Immigration Counts – Counts 2 And 3**

As to the immigration counts, Ms. Sineneng-Smith was convicted by the jury of encouraging and inducing two unlawful aliens – Amelia Guillermo and Hermansita Esteban - to reside in the United States by being hired to assist in the employers' filing of I-140 applications and mailing that information to the employers,[2] where the employers were representing themselves and the unlawful alien employee beneficiaries on those applications. [3] In pretrial proceedings and at trial, Ms. Sineneng-Smith did not contest her knowledge of the unlawful status of the two aliens or her conduct in representing their employers in submitting labor certification and I-140 applications to the Department of Labor.  In pretrial proceedings and at trial, Ms. Sineneng-Smith did not contest her knowledge of the unlawful status of the two aliens or her conduct in representing their employers in submitting labor certification and I-140 applications to the Department of Labor.

At trial is was shown that at the time of the search warrant execution on her office, she voluntarily was interviewed (without counsel) at her home by ICE and IRS agents and did not

_____

[2] The PSR (in Paragraphs 5, 9-15) does not describe the immigration offense conduct charged in the indictment and tried before the jury.  Instead, it improperly includes paragraphs describing the government's version of the government *investigation*, not the offenses charged in the indictment and upon which the guilty verdicts were predicated. Thus, Paragraphs 5 and 9-15 should be stricken to the extent they include statements solely about the government investigation and not offense conduct.  Those objections are addressed in Section II below.

[3] Evidence at trial showed both Guillermo and Esteban had obtained labor certification approvals based upon employer applications filed by Ms. Sineneng-Smith.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

4

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   deny her conduct in representing unlawful aliens and seeking labor certifications and I-140s for

2   the employers on behalf of the aliens.  She admitted she knew the aliens could not lawfully work

3   while the applications were pending.  She admitted she was aware of the expiration date of the

4   Section 245(i) eligibility period, but advised them that the benefit the aliens was receiving was a

5   priority date and, hopefully, approvals of labor certification and I-140 applications that left the

6   aliens standing in line to apply to adjust status – needing only to reach their priority date for

7   applying and a change in the law to allow them to apply.  That legitimate benefit to the aliens was

8   admitted by the government's expert witness at trial – Mr. Gooselaw – who on cross-examination

9   admitted those legitimate purposes for unlawful aliens, in the country unlawfully, to apply for

10  labor certification and I-140 approvals.  He testified that the aliens unlawful presence in the United

11  States, and working unlawfully, were irrelevant to applying for and getting such applications

12  approved.   Similarly, Mr. Castillo – the employer for two other aliens – admitted on cross-

13  examination that he had received the same advice from Mr. Sineneng-Smith and the immigration

14  lawyer he hired to represent his alien employees after Ms. Sineneng-Smith withdrew.  The

15  evidence also showed that Ms. Sineneng-Smith closed her immigration consultancy business after

16  execution of the search warrant on her office – the first time the government ever gave her any

17  notice that it considered her conduct to be violative of §1324(a)(1(A)(iv).

18          Thus, Ms. Sineneng-Smith has not disputed, indeed admitting through counsel in pretrial

19  pleadings and at trial, that the two aliens were in fact aliens, that she knew their residence in the

20  United States was unlawful and that they were in the United States illegally, that the aliens could

21  not lawfully work in the United States, and that she knew the aliens were not currently eligible for

22  Section 245(i) relief, which would require a change in the law to permit such eligibility.  The

23  primary issue on the immigration counts has always been whether her admitted conduct falls

24  within the scope of 8 U.S.C. §1324(a)(1(A)(iv).  This Court, in denying a motion to dismiss

25  predicated in part on this issue and denying a motion for judgment of acquittal, held it did.  That is

26  going to be a significant issue on appeal as application of §1324(a)(1(A)(iv) to the facts of this

27  case is a matter of first impression and a test case by the Department of Justice as to the scope of

28

5

§1324(a)(1(A)(iv).[4]  Thus, as to the immigration counts, this is not a run-of-the-mill case, but instead one presenting a substantial legal question about the scope of §1324(a)(1(A)(iv), based upon admitted conduct.  By admitting her conduct, the immigration counts present a situation where a defendant has clearly demonstrated acceptance of responsibility on the immigration counts by not contesting factual guilt (her acts) and knowledge of Section 245(i) and the aliens current ineligibility under Section 245(i) as it had expired, the unlawful status of the aliens, and the unlawfulness of their working in the United States – only contesting whether her admitted conduct falls within the scope of  §1324(a)(1(A)(iv).

### c.        The Mail Fraud Counts – Counts 5 And 6

As to the mail fraud counts, Ms. Sineneng-Smith was convicted by the jury of mail fraud, for mailings in 2007 - regarding the two same unlawful aliens, Amelia Guillermo and Hermansita Esteban - by failing to advise them they were not currently eligible to adjust their immigration status as Section 245(i) had expired by the time their employers' I-140 applications were submitted to the Department of Labor.[5]  The trial issue was not Ms. Sineneng-Smith's conduct in handling the applications, which was not disputed, but whether Ms. Sineneng-Smith failed to disclose to the two unlawful aliens that, as the time of the applications, neither had Section 245(i) eligibility.[6]

---

[4] Because of the planned appeal, and upon the advice of counsel, Ms. Sineneng-Smith's letter to this Court (attached as Exhibit 2) does not address the immigration counts.

[5] The PSR (in Paragraphs 5, 9-15) does not describe the mail fraud offense conduct charged in the indictment and tried before the jury.  Instead, it improperly includes paragraphs describing the government's version of the government investigation, not the offenses charged in the indictment and upon which the guilty verdicts were predicated. Thus, Paragraphs 5 and 9-15 should be stricken to the extent they include statements solely about the government investigation and not offense conduct.  Those objections are addressed in Section II below.

[6] This Court, on a post-trial Rule 29 motion for judgment of acquittal, upheld the convictions on these two mail fraud counts on the grounds that Ms. Sineneng-Smith committed half-truths in regard to written statements regarding Section 245(i) eligibility, not that she failed to disclose any information on Section 245(i) eligibility and was thus guilty based upon half-truth liability based upon partial disclosure regarding Section 245(i) ineligibility.  That issue is the basis of a planned appeal, as well as appeal of other issues, and upon the advice of counsel, Ms. Sineneng-Smith's letter to this Court (attached as Exhibit 2) does not address the mail fraud counts.

DEFENDANT'S SENTENCING MEMORANDUM                    Case No. CR-10-00414-RMW

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

#### d.      History And Characteristics Of The Defendant

Both the PSR (Paragraphs 59-79), the Carlson Report (at 4-7) (Exhibit 1), and Ms. Sineneng-Smith's letter to this Court (Exhibit 1) contain a concise outline of the personal history and characteristics of the defendant.  Salient points from those materials, relevant to the sought downward variance decision to be made by this Court, are outlined below in summary fashion. Ms. Sineneng-Smith has no prior criminal record before these convictions.  She is now 68 years old, with some recent health problems – gall bladder surgery and treatment for a stomach ulcer in 2012, as-yet undiagnosed breast and chest pain, where the tests have not revealed cause, and a black out and fall in 2013, again without any diagnosed cause.  She had a rather humble upbringing.  She has worked very hard her entire life – obtaining her education, working hard at jobs and her career, and now working to establish an entirely new career.  As noted above, she closed her immigration consultancy business after the search warrant on her office – the first time the government ever gave her any notice that it considered her conduct to be violative of §1324(a)(1)(A)(iv).  She has shown strong determination to rehabilitate herself and remain a productive business women and responsible member of society.  She has worked hard since closing her consultancy business to establish a new career – first an unsuccessful retail clothing sales in a brick and mortar store (now closed) and also with online sales of clothing and wedding dresses and fashion advice.  None of these businesses have been successful despite her best efforts, partially because of the bad economy and slow recovery, but also because of substantial bad publicity in Philippine publications and websites publishing the search warrant execution, her indictment, and her convictions in this case.  She now is pursuing additional education and training to start a career in online marketing.

The search warrant, indictment, and convictions publicity have left her largely a shunned woman – both personally and professionally.  She has only a very few remaining social friends and has been ostracized by the Filipino-American community.  She has been shunned by her former professional friends.  It has led to her being a rather isolated person over the past seven years since the warrant execution in 2008.  It has also led to serious familial strains with her

1    husband and her daughter and has impacted her relationship with her grandchildren, though that

2    remains good.

3            She is a personal of good character – as attested to by the letters from her few remaining

4    friends attached in Exhibit 3 - despite these convictions and has worked hard to overcome the

5    adversity caused by her criminal conduct.  The tax offenses conduct here took place in 2003 and

6    2004, with her filing her false 2002 and 2003 tax returns – 12 and 11 years ago, respectively.  The

7    charged immigration offenses (Counts 2 and 3) and the mail fraud offenses (Counts 5 and 6) took

8    place in 2007 – 8 years ago.   She has worked very hard to rehabilitate and remake herself in light

9    of her convictions – since the execution of the search warrant in 2008 and the closing of her

10   consultancy business - to turn her life around.  Defense counsel – who has represented her since

11   the day of execution of the search warrant in 2008 - has seen that hard work and determination and

12   resolve she has shown to rehabilitate herself and also the toll the investigation, indictment, and

13   convictions have taken on her socially and professionally.  Yet she continues to persevere.

14           She has readily admitted her criminal tax conduct and taken full responsibility for it.  As

15   outlined above in regard to the immigration counts, she did not contest her conduct and knowledge

16   regarding the two unlawful aliens, contesting only whether her conduct fell within the scope of

17   §1324(a)(1(A)(iv) – an issue of first impression in this test case on the scope of§1324(a)(1(A)(iv).

18   As outlined above in regard to the fraud counts, she did not contest her conduct in representing the

19   employers and aliens, contesting only whether she fraudulently misrepresented or failed to

20   disclose material facts concerning Section 245(i) eligibility.    When interviewed by ICE and the

21   IRS on the day of execution of the search warrant she cooperated with them, without counsel

22   present, and truthfully answered their questions.

23           She is not a danger to the community or a recidivism risk.  She has worked hard to rebuild

24   herself and pursue an honorable life.  Her post-offense conduct and conduct up to sentencing

25   supports a determination that there is nothing to be gained, based on the circumstances of the

26   offenses and the history and characteristics of the defendant, by a sentence of incarceration here as

27   opposed to a probationary sentence with substantial conditions as outlined herein.

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

2.      **The Need For The Sentence Imposed To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense**

The three types of offenses are serious offenses.  However, a downward variance to a substantial period of home confinement as a condition of five years supervised probation, with a substantial period of community service and a substantial fine – along with the restitution Ms. Sineneng-Smith has made on the tax counts and she will be making on the fraud counts – would not, in light of her history, character, and circumstances,  fail to reflect the seriousness of the offense, promote disrespect for the law, and would provide a just punishment for her offenses.   As the Supreme Court recognized in Gall, in finding a probationary sentence not to be unreasonable for a drug offense with sentencing range of 30-37 months of imprisonment:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  See *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987))).[4]  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.  USSG § 5B1.3.  Most probationers are also subject to individual "special conditions" imposed by the court.  Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.  App. 109.

> [4]  See also Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957) ("Probation is not granted out of a spirit of leniency. . . .  As the Wickersham Commission said, probation is not merely 'letting an offender off easily'"); 1 N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999) ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society. . . .  Often these conditions comprehensively regulate significant facets of their day-to-day lives . . . . They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist").

*Gall*, 552 U.S. at 48-49.

Similarly, the Ninth Circuit has found, in *United States v. Whitehead*, 532 F.3d 991, 992-93 (9th Cir. 2008) a probationary sentence not to be unreasonable for criminal copyright offenses

9

involving over $1million in satellite TV digital access cards with a sentencing range of 41-51months of imprisonment.[7]  The court found no abuse of discretion in the district court's conclusion that a substantial amount of community service (1000 hours), a hefty restitution order ($ 50,000) and five years of supervised release were more appropriate than prison.  *Id.* at 993.  At the sentencing hearing, the trial court heard how the defendant had repented his crime; how he had, since his conviction, devoted himself to his house-painting business and to building an honorable life; how his eight-year-old daughter depended on him; and how he doted on her. In addition, the court took into account its finding that Whitehead's crime "[di]d not pose the same danger to the community as many other crimes."  *Id.*  The Ninth Circuit found these are all considerations that the district court may properly take into account. *Id.* (citing §3553(a)(1) & (2)).

Likewise, in *United States v. Edwards*, 595 F.3d 1004 (9th Cir. 2009) the Ninth Circuit as not unreasonable a probationary sentence of five years - with seven months of home confinement, a $5,000 fine, and over $102,000 in restitution - for criminal bankruptcy fraud and a false statement to a bank, where the sentencing range was 27-33 months of imprisonment and the defendant has a substantial prior criminal record.  The trial court based its sentencing decisions on the §3553(a) factors, and found that the defendant was a much-changed individual and would not engage in similar criminal conduct in the future. *Id.* at 1010. The trial court found a probationary sentence, with a restitution requirement, satisfied the statutory requirement that the court impose a sentence sufficient, but not greater than necessary, as mandated by §3551(a). *Id.*  The trial court also considered the defendant's conduct before sentencing and found nothing to be gained, based on the circumstances of the offenses and the history and characteristics of the defendant, by a sentence of incarceration. *Id.*  The district court found that although the offenses were extremely serious, the defendant's changes in his life prior to any indictment indicates respect for the law,

---

[7] Of course, no cited case will ever be exactly on point – or is that a requirement - because each sentencing must, as noted above, be an individualized one based upon the §3553(a) factors and other relevant considerations.  However, the cases cited herein are relevant in demonstrating various factors found relevant to §3553(a) analysis and also found to support a downward variance to a probationary sentence – making the downward variance sentence not substantively unreasonable.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

DEFENDANT'S SENTENCING MEMORANDUM                    Case No. CR-10-00414-RMW

1    such that the factors of the need for the sentence to reflect the seriousness of the offense, promote

2    respect for the law, and provide just punishment for the offenses did not require incarceration. *Id.*

3    The trial court further found that under the factor of providing adequate deterrence to criminal

4    conduct was not significant because general deterrence was not a significant factor in the case,

5    finding the probationary sentence and felony convictions themselves constituted sufficient

6    deterrence to prevent the defendant from committing future crimes and work in the community.

7    *Id.*  The trial court also found a probationary sentence would protect the public from further crimes

8    of the defendant for the same reasons.  *Id.* On appeal by the government challenging the sentence

9    as substantively unreasonable, the Ninth Circuit found the trial court's discussion and findings on

10   the §3553(a) factors, and the sentence imposed, was not an abuse of discretion in light of the

11   history and circumstances of the defendant.  *Id.* at 1015-18.

12          In *United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008) the Ninth Circuit found a one-day

13   sentence with a three year supervised release term, with a condition of serving  twelve months and

14   one day at a corrections center not to be substantively unreasonable – for multiple counts of health

15   care fraud, embezzlement, and money laundering offenses, and a false statement to a bank, where

16   the sentencing range was 30-37 months of imprisonment.  The court noted that white collar crimes

17   should not be treated differently that other crimes where appellate courts have affirmed sentences

18   on substantive unreasonableness of sentence challenges where the convictions were for drug,

19   firearms, and child pornography offenses.  *Id.* at 1003, footnote 1 (collecting cases).  The court

20   noted that a sentencing court cannot quantify variances from the Guidelines in terms of a certain

21   percentage of the maximum, minimum, or median sentence recommended by the Guidelines

22   because that would give no weight to the substantive restriction of freedom involved in a term of

23   probation or supervised release, which can also be quite oppressive considering the standard

24   conditions of probation and possible special conditions.  *Id.* at 1003-04.

25          Courts have also permitted downward variances to a probationary sentence or lesser

26   imprisonment term in tax cases in certain cases, although such cases arise only in government

27   appeals of a probationary sentence.  *E.g., United States v. Tomko*, 562 F.3d 558 (3rd Cir. 2009) (en

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

11

DEFENDANT'S SENTENCING MEMORANDUM                    Case No. CR-10-00414-RMW

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   banc) (probationary sentence with community service, restitution, and fine for tax evasion held not

2   to be substantively unreasonable where the Guidelines sentencing range was 12-18 months

3   imprisonment); *United States v. Carter*, 538 F.3d 784 (7th Cir. 2008) (two year sentence for tax

4   fraud, money laundering, and engaging in money laundering transactions offenses with Guidelines

5   range of 87-108 months imprisonment found not to be substantively unreasonable).

6          Each sentencing, of course, must be resolved on its own facts and circumstances.

7   However, these cited cases are relevant to demonstrating that the §3553(a) factors, as applied to

8   this case, warrant serious consideration of the downward variance sought herein, or alternatively, a

9   much lesser period of confinement than the advisory Guideline 27-33 month range.  Of course,

10  that ultimate decision resides within the discretion of this Court, subject to the limitations outlined

11  above in Section I A.

12         The seriousness of the offenses here, respect for the law, and providing just punishment –

13  when viewed in light of the circumstances outlined above – would also justify a downward

14  variance from the sentencing range of 27-33 months imprisonment.  Ms. Sineneng-Smith is 68

15  years old, with no prior criminal record.  Her good character is demonstrated by her letters in

16  support of her sentencing, found in Exhibit 3.  Her personal history – as summarized above and in

17  the PSR and the Carlson Report - demonstrates a person who has always worked hard – both with

18  educational pursuits and professional efforts – to better herself from her rather humble beginnings

19  in the Philippines.  Once the search warrant was executed in 2008, she closed down her

20  immigration consultancy business and withdrew from representing employers/employees on all

21  still-pending applications.  In the interim between the execution of the search warrant and the

22  indictment being filed, and from the indictment up until the present, she worked hard to establish a

23  clothing sales business - both in a brick and mortar store and online – and a wedding dress online

24  business.  Despite her best efforts, the businesses have not succeeded due to the then bad

25  economy, the publicity surrounding the criminal investigation, her indictment, and her

26  convictions, and the difficult nature of making such businesses succeed.  She now is pursuing a

27  business in internet marketing by first getting the educational and technical background needed for

28

12

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

such a startup.  She has suffered both personal and professional ostracism due to this matter, such that she has few remaining social or professional friends.  Her marital relationship has been seriously affected by this matter, as well as her relationship with her daughter.  She has worked hard to try to maintain these relationships and keep a close relationship to her grandchildren.  She is not a danger to the community.  She is not a risk for future criminal conduct.  She has worked hard to rebuild her life and a new career and be an honorable citizen.

She has taken responsibility for her tax offenses – clearly admitting her guilty in a detailed factual statement made at the time of here guilty pleas - and clearly shown contrition.  Her tax offense conduct relates to tax returns filed in 2003 (for the 2002 tax year) and in 2004 (for the 2003 tax year) – conduct that occurred, respectively, over 12 and 11 years ago.  In addition to restitution for tax loss made by Ms. Sineneng-Smith, she must, after her sentencing resolve with the IRS penalties and interest for her under-declared taxes for 2002 and 2003 tax years – which the IRS calculates as adding up to over $900,000 for fraud penalties and accrued interest.  Any fraud penalty and the interest accrued are substantial punishments in and of themselves.  Clearly, any civil fraud penalty is intended to be and is punitive.

She has taken responsibility for the 2007 immigration offenses by, as outlined above, not contesting her conduct and knowledge of the law in regard to the immigration offenses, but did contest whether her conduct fell within the scope of §1324(a)(1(A)(iv). She plans on doing an appeal of that issue of first impression presented by this government test case on the scope of §1324(a)(1(A)(iv).[8]  That conduct occurred 8 years ago.

---

[8] Because of this appeal issue, and upon advice of counsel, Ms. Sineneng-Smith has not further addressed the immigration counts in her letter to this Court.  However, her not contesting her conduct would, in itself, warrant a two-level acceptance of responsibility downward adjustment.  This is precisely the situation acknowledged in Guidelines §3E1.1, Application Note 2:

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant does to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct.

DEFENDANT'S SENTENCING MEMORANDUM                                    Case No. CR-10-00414-RMW

On the fraud counts, she has taken responsibility for her conduct, not contesting her actions in filing the applications and only contesting her making of a false statement or omission with intent to defraud.  She has not submitted a statement on the fraud counts based upon advice of counsel in light of her planned appeal on those counts.  See note 6 above.  That conduct occurred in 2007 – 8 years ago.

Under such circumstances, a downward variance as proposed would be consistent with the factors regarding the seriousness of the offenses here, respect for the law, and providing just punishment.

### 3. Adequate Deterrence For Criminal Conduct And To Protect The Public From Further Crimes By The Defendant

These two factors, relating to general and specific deterrence, are the third and fourth factors under §3553(a).  For the same reasons as outlined above, the proposed downward variance in this case is consistent with the factor that a sentence be an adequate deterrence to criminal conduct – both generally and specifically. Ms. Sineneng-Smith is 68 years old and has no prior criminal record.  Her offenses here occurred in 2003 and 2004 (tax counts) and 2007 (immigration and fraud counts).  She has successfully met her conditions of pretrial and post-verdict release for a period of over five years.  She is not a danger to the community or a person who is at risk for committing future criminal conduct.  A probationary sentence as proposed herein would satisfy any special deterrence considerations.  General deterrence of others would not be adversely affected by the proposed downward variance sought herein as it would be grounded upon the unique facts and circumstances of this case and relating to Ms. Sineneng-Smith and the §3553(a) factors this Court must consider in making the individualized sentencing decisions required under the Guidelines and relevant case law, as discussed above.

Thus, these factors do not weigh against the proposed downward variance sought herein.

### 4. The Need To Provide The Defendant With Needed Educational Or Vocational Training, Medical Care, Or Other Correctional Treatment In The Most Effective Manner

This factor is relevant to a probationary sentence providing the needed flexibility for Ms. Sineneng-Smith to continue her education and develop a new internet marketing business, as

14

addressed in her letter to this Court.  Although Ms. Sineneng-Smith does not currently have any

serious identifiable medical issues, Mr. Carlson's report summarizes some medical issues she has

had – gall bladder surgery in 2012, treatment for a stomach ulcer, a 2013 black out and fall for

which no cause could be determined, and some breast pain issues for which no cause has been

determined.  At 68 years of age, she is at an age where maladies can appear suddenly and are often

difficult to diagnose.  See Guidelines §5H1.1 and §5H1.4 – Age And Health.  Although these

factors would not warrant a downward departure, they are relevant to the proposed downward

variance and are factors supporting such a variance.  Any counseling or career counseling

correctional treatment can best be provided in a probationary sentence as sought herein as opposed

to that available in prison.  A sentence of imprisonment will bring Ms. Sineneng-Smith's hard-

fought efforts to start a new career to a grinding halt, only to be started up again after any

imprisonment sentence.  It would put her back at square one at an even older age and likely with

more medical issues making her transition to her new career even more difficult.

> ### 5. The Kinds Of Sentences Available And Sentencing Range Established For The Applicable Offense Category And Criminal History

These two factors – (1) what is statutorily permissible and (2) what is the Guidelines range

-are not inconsistent with the proposed downward variance sought.

As the PSR notes (Paragraph 88) a probationary sentence is permitted by statute for all

offense here. 18 U.S.C. §3561(c)(1).  As the PSR further notes (Paragraph 88), one or more of the

following must be imposed as a condition of probation: a fine, restitution, or community service.

18 U.S.C. §3563(a)(2).  As the PSR further notes (Paragraph 89), any probation terms must run

concurrently.18 U.S.C §3564(b).

The proposed downward variance full complies with statutory requirements, especially

since it includes as conditions of probation a fine, restitution, and community service.

As noted above, the total offense level is 18, with a Guidelines range of 27-33 months

imprisonment.  As discussed above, similar downward variances have been based upon the factors

and grounds articulated herein, with such considerations found to be appropriate ones, and

probationary sentences found by the Supreme Court and the Ninth Circuit in analogous

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    circumstances not to be substantively unreasonable.[9]  Thus, nothing in the advisory Guidelines

2    range precludes the proposed downward variance sentence.  As discussed above and below, the

3    §3553 factors, when taken in conjunction with the facts and circumstances of this case, clearly

4    permit this Court to, as a matter of its sound discretion, to grant the requested downward variance

5    sought herein.

6              **6.        Any Pertinent Guidelines Policy Statement**

7              The defense is not aware of any pertinent Guidelines policy statement that is contrary to

8    the proposed downward variance sought herein.

9              **7.        The Need To Avoid Unwarranted Sentencing Disparities**

10             There would be no identifiable *unwarranted* sentencing disparity under the proposed

11   downward variance as any disparity would be warranted by consideration of the §3553(a) factors

12   as addressed herein.  Furthermore, as discussed above, similar downward variances have been

13   based upon the factors and grounds articulated herein and found by the Supreme Court and the

14   Ninth Circuit not to be substantively unreasonable.

15             Thus, this factor supports the proposed downward variance sought herein.

16             **8.        The Need To Provide Restitution To The Victims Of The Offense**

17             The proposed downward variance includes payment of full restitution to the victims of the

18   offenses.

19             As to the tax counts, Ms. Sineneng-Smith has already provided to the IRS agent on this

20   case two checks for restitution for the additional taxes owed and underpaid for tax years 2002 and

21   2003.  These checks are for less that the full tax loss because it is expected, based upon

22   discussions with government counsel, that the IRS civil division will, once this criminal case is

23   over, allow a 2008 tax year carry back loss to the 2003 tax year as a set off against 2003 tax loss

24   and allow a 2004 credit to be set off against the 2002 tax loss.  To the extent any such set offs do

25

26   _____

27   [9] Of course, no cited case will ever be exactly on point – or is that a requirement because each sentencing must, as
     noted above, be an individualized one based upon the §3553(a) factors and other relevant considerations.

28

DEFENDANT'S SENTENCING MEMORANDUM                                    Case No. CR-10-00414-RMW

1   not fully pay the taxes owed, Ms. Sineneng-Smith promptly will pay any remaining outstanding

2   balance on tax loss for either tax year.

3          On the fraud counts, based upon the fraud convictions and relevant conduct, restitution of

4   $43,550 will be paid by Ms. Sineneng-Smith once ordered by this Court.

5          Thus, this factor supports the proposed downward variance sought herein.

6          **9.     The §3553 Factors And Unique Facts And Circumstances Of This Case
                     Warrant The Proposed Downward Variance To A Probationary
7                    Sentence**

8          As outlined above, the §3553(a) factors and unique facts and circumstances of this case

9   warrant, as part of an individualized sentencing, that this Court grant, in the exercise of its sound

10  discretion, the proposed downward variance to a probationary sentence with the substantial

11  conditions also proposed.  In practical effect, the sought downward variance would be from a total

12  offense level 18 to a level 11, where the Guidelines expressly permit a probationary sentence with

13  a condition of home confinement for offenses in Zone B of the Sentencing Table.  Guidelines

14  §5B1.1(a)(2); §5C1.1(c)(3).     Such a sentence would comport with the §3553(a) factors and

15  would be composed of:

16          •   a substantial period of probation on each count (five years maximum, to run

17              concurrent on each count);

18          •   a substantial period of home confinement with electronic monitoring – the defense

19              proposes, as part of the proposed downward variance to a probationary sentence,

20              six months of  home confinement or such other amount of time as this Court would

21              deem appropriate;

22          •   full restitution to the IRS for tax loss, as outlined above, and $43,550 in restitution

23              to fraud victims based upon the counts of conviction and relevant conduct;

24

25          •   a substantial fine (the PSR recommends a $6,000 fine) - the defense proposes, as

26              part of the proposed downward variance to a probationary sentence, a fine of

27              $30,000 to $60,000, as this Court would deem appropriate;

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

DEFENDANT'S SENTENCING MEMORANDUM                    Case No. CR-10-00414-RMW

- a substantial amount of community service - - the defense proposes, as part of the proposed downward variance to a probationary sentence, several hundred hours of community service, as this Court would deem appropriate; and

- payment of the required $600 in special assessments (PSR, Sentencing Recommendations).

If this Court does not feel such a probationary sentence downward variance is warranted, the defense alternatively would request this Court to impose a sentence of three months or less imprisonment and a period of supervised release, with conditions of some period of home confinement, some hours of community service, and a fine in an amount deemed appropriate – as deemed appropriate under the §3553(a) factors and circumstance of this case.

## II.    OBJECTIONS TO THE PSR

The defense makes the following objections to the PSR, correlated to the paragraph number in the PSR.  Depending on the sentence this Court contemplates imposing, findings may not be necessary if the objection relates to a matter that will not affect sentencing or will not be considered by the court in sentencing.  Rule 32(i)(3)(B), F.R.Crim.P.

**Paragraphs 2 And 4**

Ms. Sineneng-Smith objects to the failure of Paragraphs 2 and 4 to reflect the government's voluntary dismissal of the money-laundering counts prior to trial, and dismissal of all the forfeiture allegations before trial or to be done before sentencing.

Ms. Sineneng-Smith objects to the failure of Paragraph 4 to reflect that the dismissal of Counts One and Four was under F.R.Crim.P., Rule 29 and granted Ms. Sineneng-Smith acquittals on those counts.

Even if not considered by this Court, such PSR statements could adversely impact a defendant's Bureau of Prisons classification and release decisions if this Court should impose a prison sentence in this case.

DEFENDANT'S SENTENCING MEMORANDUM                              Case No. CR-10-00414-RMW

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**Paragraphs 9 - 16 And 18 - The Offense Conduct**

      **Paragraphs 9-13**

      Ms. Sineneng-Smith objects to these paragraphs as they do not relate to offense conduct, but simply to relate to the investigation.  The immigration and fraud counts offense conduct relates to only two aliens – Amelia Guillermo and Hermansita Esteban – and not to anyone else. Furthermore, the jury instruction given on mail fraud required the government to prove false pretenses fraud – that is, a false statement made to each of the two aliens with intent to defraud - not simply that there was a scheme to defraud not requiring proof of a specific false statement. None of these investigative  "facts" in the PSR were part of the trial or charged as offenses and the defense has not had any opportunity to contest these statements found in investigative reports. These paragraphs should be stricken and not included in the final PSR.  At most, if at all, they should only be included as part of the government's version of the case, not as offense conduct. Even if not considered by this Court, such PSR statements could adversely impact a defendant's Bureau of Prisons classification and release decisions if this Court should impose a prison sentence in this case.

      **Paragraph 14**

      Ms. Sineneng-Smith objects to inclusion of the sentences: "However, agents noted that all of Sineneng-Smith's clients that were interviewed stated that they were never given a line by line review of the agreement and that they were given the impression it was okay for them to work once the petition process commenced.  Sineneng-Smith told agents that no papers had been filed with the DOL on behalf of M.A. because he was behind on his payments to her."

      None of these "facts" were part of the trial or charged as offenses and the defense has not had any opportunity to contest these statements found in investigative reports.       See objections to Paragraphs 9-13.  These paragraphs should be stricken and not included in the final PSR as "offense conduct."   At most, if at all, they should only be included as part of the government's version of the case, not as offense conduct. Even if not considered by this Court, such PSR

DEFENDANT'S SENTENCING MEMORANDUM      Case No. CR-10-00414-RMW

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  statements could adversely impact a defendant's Bureau of Prisons classification and release

2  decisions if this Court should impose a prison sentence in this case.

3      **Paragraph 15**

4      Ms. Sineneng-Smith objects to the statement that she charged "her victims $5,900 to file

5  such applications all the while knowing that the law had changed, and that her clients did not

6  qualify under existing immigration regulations to obtain lawful permanent residence."  This

7  statement implies that it applies to all her clients that were not Section 245(i) eligible.  See

8  objections to Paragraphs 9-13, 14.  None of these "facts" as to unlawful aliens – other than

9  regarding aliens who actually testified at trial - were part of the trial.  As to all the other clients

10  referenced in the above quote, no offense was charged at to them, no evidence was adduced as to

11  them and what was represented to them by whom, and the defense has not had any opportunity to

12  contest these statements found in investigative reports. The quoted language should be stricken

13  and not included in the final PSR as "offense conduct."  At most, if at all, it should only be

14  included as part of the government's version of the case, not as offense conduct.  Even if not

15  considered by this Court, such PSR statements could adversely impact a defendant's Bureau of

16  Prisons classification and release decisions if this Court should impose a prison sentence in this

17  case.

18      **Paragraph 16**

19      Ms. Sineneng-Smith objects to the failure of Paragraph 16 to include her entire factual

20  basis for entry of her guilty pleas on the tax counts (see block quote, pages 4-5 above) – provided

21  to the Court when the pleas were taken.  The PSR paragraph includes only portions of what was

22  said and admitted to by Ms. Sineneng-Smith at the time of her guilty pleas.  The entire statement

23  needs to be included.  This is particularly important as (1) it is directly relevant as to whether Ms.

24  Sineneng-Smith should get a reduction for acceptance of responsibility as applied in the PSR and

25  (2) it is directly relevant as a factor warranting a downward variance.  Such PSR statements also

26  could adversely impact a defendant's Bureau of Prisons classification and release decisions if this

27  Court should impose a prison sentence in this case.

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

20

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For all the foregoing reasons, this Court should grant the proposed downward variance to a probationary sentence as outlined above or, alternatively, a sentence with a short period of confinement and supervised release with conditions as outlined above.  This Court should also sustain the objections to the PSR made by the defense, if this Court finds the objections relate to a material matter that may affect the sentence or might adversely affect BOP classification or release decisions if this Court were to impose a sentence of imprisonment.

Dated:  December 7, 2015                 Respectfully submitted,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP


By:____/s/ Daniel F. Cook_____

Counsel for Defendant
EVELYN SINENENG-SMITH

21