# Exhibit 1

# DAYLE C. CARLSON
## CORRECTIONAL CONSULTANT

2901 27TH STREET ▲ SACRAMENTO, CALIFORNIA 95818 ▲ (916) 451-6699 ▲ FAX: (916) 451-6646 ▲ dcarlson@sentencingexperts.com

December 4, 2015

Daniel F. Cook, Esq.
KASOWITZ, BENSON, TORRES & FRIEDMAN
101 California Street, Suite 2300
San Francisco, California 94111

Re:   *United States v. Evelyn Sineneng-Smith*
      ND/CA 5:10cr00414-001 RMW
      *PRESENTENCE INVESTIGATION REPORT*

Dear Mr. Cook:

At your request, I investigated the background, current circumstances, and offense conduct of Evelyn Sineneng-Smith to determine a recommendation for sentencing as a result of her jury trial conviction and pleas of guilty to various offenses listed below. As you know, for the last 31 years, I have been in private practice as a sentencing consultant, having previously served as a United States Probation Officer and Supervising United States Probation Officer in the Northern District of California at San Francisco for ten years.

Ms Sineneng-Smith was convicted as follows:

> [By Jury Trial] Counts 2-3: A violation of Title 8 USC 1324(a)(1)(A)(iv), Encouraging and Inducing Illegal Immigration for Private Financial Gain; and

> Counts 5-6: A violation of Title 18 USC 1341, Mail Fraud.

> [By Plea of Guilty] Counts 7-8: A violation of Title 26 USC 7206(1), Willfully Subscribing to a False Tax Return.

***Offense:*** Counts 2-3, 5-6 involve Evelyn Sineneng-Smith operating an immigration consultation business in San Jose, California, and elsewhere from 1990 to 2008. The present investigation involved Ms. Sineneng-Smith advising primarily Filipino nationals, who came to the United States and over stayed their visas, but wished to apply for labor certification to enable them to stay and work in the United States.

The Legal Immigration Family Equity Act ("LIFE Act") was initially passed by Congress in 1994 and enabled previously ineligible aliens to apply to adjust their status, thus enabling them to remain and work in the United States. However, their applications must be dated by April 30, 2001. Ms. Sineneng-Smith was aware of the expiration date.

Daniel F. Cook, Esq.
Re: *United States v. Evelyn Sineneng-Smith*
   *PRESENTENCE INVESTIGATION REPORT*
Page 2

The allegations include that Ms. Sineneng-Smith charged each client $5,900 to prepare an application to the United States Department of Labor. The clients primarily worked in the residential elder care industry and it was their prospective employer who technically applied by form ETA-750 to the DOL. Once the ETA-750 was approved, Ms. Sineneng-Smith aided the filing of a I-140 application to the U.S. Citizenship and Immigration Service to enable the alien to remain in the U.S. and work. Ms. Sineneng-Smith did so knowing the applicants were ineligible, because of the April 30, 2001, deadline date.

Based upon the fraud convictions, and the parties' agreement on fraud loss amounts, the following victims and losses were identified:

| | |
|---|---|
| Evelyn Das West | $ 6,995 |
| Caridad Escarez | $ 6,995 |
| Hermansita Esteban | $ 6,995 |
| Fred Esteban | $ 7,995 |
| Amelia Guillermo | $ 7,145 |
| Erlinda Sadalo | $ 7,425 |
| | $43,550 |

For the tax years 2002 and 2003, Ms. Sineneng-Smith submitted to her accountant only partial income records with which to calculate her individual tax liability. Consequently, her taxes were underpaid by:

| | |
|---|---|
| 2002 | $ 426,376 |
| 2003 | $ 363,147 |
| TOTAL | $ 789,523 |

***Defendant's Statement:*** With respect to the jury trial counts of conviction, Ms. Sineneng-Smith did not submit a statement. Regarding the false tax return counts, she submitted the following statement:

> "For each of the tax years 2002 and 2003, I signed, under penalty of perjury, my United States Individual Income Tax Return prepared by my accountant. At the time that I signed each return, I operated an immigration consultation business, and most of the income listed on my return came from payments by my clients. I deposited the payments into various bank accounts. When I submitted my financial materials to my accountant for each of the two tax years for her to prepare my personal tax returns, I gave her only some, but not all, of the financial records showing only some, but not all of my gross income from my immigration consultancy business for each respective tax year. I also did not inform her about

Daniel F. Cook, Esq.
Re: *United States v. Evelyn Sineneng-Smith*
  *PRESENTENCE INVESTIGATION REPORT*
Page 3

this additional gross income for each tax year. The financial information I gave my accountant for each of these two tax years materially understated my gross business income from my immigration consultancy business for each tax year. When I mailed each tax return to the IRS, I knew that each return was not true and correct as to the amount of gross receipts reported on the return so that I would be paying less income taxes to the IRS than I actually owed. I knew at the time I mailed the returns that this was against the law."

*Victim Impact:* Ms. Sineneng-Smith indicated that she is prepared to make full restitution to both the Government (IRS) and the individual victims.

*Prior Record:* None.

*Guideline Calculation:* Pursuant to United States Sentencing Guideline (USSG) 3D1.2(b), Counts 2 and 3 and Counts 5 and 6 are grouped, as they involve the same victim and a common scheme or plan. Counts 7 and 8 are grouped separately, as they involve a separate victim and societal interest, the U.S. government.

Group 1: Counts 2 and 3 and Counts 5 and 6

  8 USC 1324(a)(1)(A)(iv) is referenced to USSG 2L1.1, which provides for a Base Offense Level 12 for a violation of 8 USC 1324(a)(1)(iv):

| | |
|---|---|
| USSG 2L1.1(a)(3) Base | 12 |
| No other specific offense characteristics | |
| | 12 |

  18 USC 1341 is referenced to USSG 2B1.1, which provides for a Base Offense Level 7 when the maximum penalty is 20 years or greater:

| | |
|---|---|
| USSG 2B1.1(a)(1) Base | 7 |
| (b)(1)(D) $43,550 loss | 6 |
| No other specific offense characteristics | |
| | 13 |

Group 2: Counts 7 and 8

  26 USC 7206(1) is referenced to USSG 2T1.1(a)(1), which has a Base Offense Level from the Table at USSG 2T4.1 and a loss between $550,000-$1.5 million:

Daniel F. Cook, Esq.
Re: *United States v. Evelyn Sineneng-Smith*
   *PRESENTENCE INVESTIGATION REPORT*
Page 4

      USSG 2T1.1(a)(1) Loss $789,523    20
      No other specific offense characteristics
                                                        20

Multiple Count Adjustments:

| Group | Adjusted Offense Level | Units |
|---|---|---|
| 1 | 13 | .5 |
| 2 | 20 | 1.0 |
| TOTAL UNITS | | 1.5 |

      Greater of Adjusted Offense Levels    20
      Increase Offense Level    1
      Adjusted Offense Level    21

      USSG 3E1.1(a)&(b) Acceptance of Responsibility  -3
      TOTAL OFFENSE LEVEL    18

***Personal and Family Data:*** Now 68 years old, Evelyn Sineneng-Smith was born in Manila, The Phillippines on June 17, 1947. She is the oldest of four children born to the marriage of Ciriaco and Maria Sineneng. Ciriaco Sineneng died in 1999 at age 89. Throughout his working life he was in the used automobile business, specializing in purchasing used cars from American servicemen and reselling them. He also worked in a small automobile battery manufacturing shop. Maria Sineneng died in July 2014 at the age of 95. She also worked in the battery shop and ran a small clothing factory in Manila.

Evelyn has three younger brothers, two of whom are deceased. Roberto died in 1977 at the age of 25 from kidney failure. Ciriaco, in his 60's died in 2014 from internal bleeding from a ruptured aneurism. 65 year old Jaime survives. He owns a small electrical shop in Manila. Evelyn and Jaime have a strained relationship, because of Jaime's resentment of Evelyn's apparent financial success in the United States.

Evelyn attended parochial schools in Manila. Her parents were devout Catholics. She was promoted early to Siena College (high school) and graduated in 1963. She then attended College of the Holy Spirit, where she earned a Bachelor's Degree in Business Administration and Commerce.

During Evelyn's childhood her family resided in a small apartment above the battery shop where her parents worked. Evelyn spent her free time in the shop with her parents. She began suffering serious physical symptoms, including heavy menstrual periods beginning at age 12. Doctors

Daniel F. Cook, Esq.
Re: *United States v. Evelyn Sineneng-Smith*
  *PRESENTENCE INVESTIGATION REPORT*
Page 5

concluded that Evelyn was affected by the toxic chemicals from the battery shop. It was traumatic for Evelyn, who endured several hospitalizations. The symptoms abated when the family moved.

After college, Evelyn migrated to the United States and initially landed in New York City. She arrived on a student visa and began attending secretarial college at Therese Aub Secretarial School in New York. She then studied briefly at Cambridge Business School. In 1967, Evelyn married Hermilo Tadeo in New York. Evelyn and Hermilo adopted a daughter, now 42 year old Evelyn "Ginnie" Lomio. Ginnie lives with her husband and two sons in San Jose.

In 1969, Evelyn and Hermilo returned to The Phillippines. Evelyn had an ambition to become a clothes designer. She opened a small shop in Manila, "The Fashion Boutique," which she ran for eight years. She decided in 1977 to return to the United States. She settled in Burlingame. Evelyn and Hermilo divorced in 1978. Evelyn had opened a Fashion Boutique in Mountain View. The shop closed in 1984.

In 1982, Evelyn began working for Ross Stores as a display artist. At the same time she started law school at Peninsula Evening Law School. While attending there one of her professors was Sam Smith. Evelyn and Sam were married in 1984. Evelyn began working as a legal secretary for U.S. Fidelity and Guarantee in San Jose and transferred to Lincoln Law School. Evelyn and Sam's marriage was relatively short lived. They divorced in 1986, although they continued to see each other for several years thereafter. Evelyn graduated from Lincoln Law School in 1990. She did not pass the Bar exam and indicated that she had to work and could not afford a bar preparation class.

In 1990, for four months, Evelyn worked for Seagate as a paralegal. Seagate, located in Scotts Valley, specialized in aiding companies to obtain H-1 visas for foreign employees. The end of the year, Evelyn left Seagate and opened her own immigration consulting firm, which is the object of the present prosecution.

Evelyn became a U.S. citizen in 1992. She married for a third time to Pedro "Fred" deVera. Fred is semi-retired and works part time as a security guard. Evelyn and Fred do not have a harmonious relationship due, according to Evelyn, to the imposition of Fred's grown children. Apparently, they resent that Evelyn has not done more to facilitate all of the children migrating from The Phillippines to the United States.

Evelyn closed her consulting business in 2008. Since that time, she opened a boutique clothing store in the Great Mall, but was forced to close it due to high expenses. She has taken on-line marketing classes and is now developing an internet based clothing business involving both antique clothing and her own designs. She works out of her home in San Jose.

Daniel F. Cook, Esq.
Re: *United States v. Evelyn Sineneng-Smith*
  *PRESENTENCE INVESTIGATION REPORT*
Page 6

Evelyn is 4'11" tall and weighs between 108-110 pounds. She had her gall bladder removed in 2012 and has been treated for a stomach ulcer. She blacked out and fell in 2013, but no cause could be found by physicians. She experiences breast pain that doctors have speculated could be related to caffeine consumption. She takes medication for a skin condition. Evelyn recently underwent a cardiac stress test and no abnormalities were detected.

Evelyn does not drink alcohol or take drugs. She has had no experience with mental health professionals and regards herself as depressed over her current circumstances, but is otherwise in good mental health.

## EVALUATION

68 year old Evelyn Sineneng-Smith is before the Court for sentencing following a jury conviction for encouraging and inducing illegal immigration and related mail fraud, and pleas of guilty to subscribing to false tax returns. The advisory United States Sentencing Guideline in this case is Total Offense Level 18, Criminal History Category I, or 27-33 months. Ms. Sineneng-Smith is prepared to make full restitution to both the Government victim and the individual victims.

A "3553(a) analysis" begins with the nature and circumstances of the offense. Ms. Sineneng-Smith's conduct extended over a lengthy period of time and involved a number of people. Her clients, however, rather than traditional victims who were financially harmed by the defendant, actually benefitted, in that they continued to reside and work in the United States as they desired. In many ways, the true victim of this offense is the integrity of the immigration system, not the individuals. As a corollary "benefit," of course, Ms. Sineneng-Smith's clients performed difficult and necessary work caring for a vulnerable population. It is not work generally sought.

This offense conduct is not entirely reflective of Ms. Sineneng-Smith's character or values. She has always worked hard and striven to improve herself through education. She has opened and run several businesses, indicative of her entrepreneurial spirit. Indeed, her present efforts at self rehabilitation since she closed her consulting business seven years ago is a significant mitigating factor.

At age 68, any period of incarceration will be very difficult for Ms. Sineneng-Smith. She is at an age when maladies appear suddenly and are often difficult to diagnose. She is presently experiencing symptoms that have gone undiagnosed by her physicians. (See, USSG 5H1.1 and USSG 5H1.4, Age and Health). Alternatives to incarceration for Ms. Sineneng-Smith's age group recognize the added costs of housing and caring for them in a custodial setting.

Ms. Sineneng-Smith has already endured substantial social ostracization in the Filipino community as a result of this prosecution. She has been abandoned by most of her "friends." She

Daniel F. Cook, Esq.
Re: ***United States v. Evelyn Sineneng-Smith***
   *PRESENTENCE INVESTIGATION REPORT*
Page 7

has suffered considerable social isolation over the last seven years. Despite that, she is certainly capable of being successful on community supervision. There is no need to incarcerate her to protect the public as the last seven years demonstrate. Her present entrepreneurial pursuits are completely benign and are to be admired given Ms. Sineneng-Smith's age. A sentence of probation, conditioned upon a substantial period of home detention, full restitution, and substantial community service can fulfill the requirements of sentencing.

Respectfully submitted,

*[signature]*
Dayle C. Carlson, Jr.



# DAYLE C. CARLSON
## CORRECTIONAL CONSULTANT

2901 27TH STREET ▲ SACRAMENTO, CALIFORNIA 95818 ▲ (916) 451-6699 ▲ FAX: (916) 451-6646 ▲ dcarlson@sentencingexperts.com

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 1984 - present | *Correctional Consultant in private practice*<br>• Federal Sentencing Guideline expert<br>• Alternative sentencing reports<br>• Juvenile assessments<br>• Expert witness regarding sentencing and juvenile fitness<br>• Capital case penalty phase preparation |
| 1983-1984 | *Supervising United States Probation Officer*, Northern District of California, San Francisco, California<br>• Supervised unit of United States Probation Officers<br>• Established District wide pretrial services unit |
| 1974-1983 | *United States Probation Officer*, Northern District of California, San Francisco and Santa Rosa, California<br>• Administered District wide substance abuse program<br>• Prepared presentence investigation and parole reports<br>• Supervised mixed caseload of probationers and parolees |
| 1971-1974 | *Deputy Probation Officer*, Sonoma County California, Santa Rosa<br>• Established county wide drug diversion program<br>• Prepared presentence reports for Superior and Municipal Courts |

## RELATED EXPERIENCE

| | |
|---|---|
| 1984-1987 | *Staff Counselor*, Erickson Institute, Santa Rosa, California |
| 1976-1990 | *Guest Lecturer in Criminal Justice*, Santa Rosa Junior College, Santa Rosa, California, and College of Marin, Kentfield, California |
| 1986-1994 | *Chair, Sonoma County Drug Advisory Board*, appointed by County Board of Supervisors |
| 1988-1998 | *Member, Board of Directors*, Center on Juvenile and Criminal Justice, San Francisco, California |
| 2003-2006 | *Commissioner*, Criminal Law Advisory Commission, Board of Legal Specialization, State Bar of California |

## EDUCATION

Masters in Counseling, Sonoma State University, Rohnert Park, California, 1975
Bachelors Degree, Political Science, San Jose State University, San Jose, CA, 1971
Doctoral Study, Clinical Psychology, Professional School of Psychology, San Francisco, 1984-87