UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　v.<br>SINENENG-SMITH,<br>　　　　Defendant. | Case No. 10-cr-00414-BLF-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>[Re: ECF No. 371] |

Before the Court is Defendant Evelyn Sineneng-Smith's motion for compassionate release. Ms. Sineneng-Smith was sentenced to 18 months in prison for mail fraud, illegally inducing illegal immigration for private financial gain, and willfully subscribing to a false tax return. Ms. Sineneng-Smith's offense conduct was her operation of an immigration consulting firm in San Jose, California, where she advised foreign nationals to file lawful permanent resident applications in exchange for a fee, despite knowing that her clients were not eligible under existing regulations. Since October 18, 2021, Ms. Sineneng-Smith has been serving her sentence at Federal Correctional Institution, Dublin ("FCI Dublin") in Alameda County, California. With approximately one-third of her prison sentence served as of this date, Ms. Sineneng-Smith moves for compassionate release, arguing that as a 74-year-old woman with various medical conditions that put her at risk for adverse consequences from COVID-19 ("COVID"), there are extraordinary and compelling reasons for reducing her prison sentence. *See* Motion, ECF No. 371; Reply, ECF No. 377. The Government opposes, arguing that given that Ms. Sineneng-Smith has received a COVID vaccine and booster, the number of COVID cases in FCI Dublin and Alameda County is low and declining, and Ms. Sineneng-Smith has served only around a quarter of her sentence, the Court should not shorten Ms. Sineneng-Smith's already-lenient 18-month sentence. *See* Opposition, ECF No. 375.

Based on the below reasoning, the Court DENIES Ms. Sineneng-Smith's motion for compassionate release.

## I. BACKGROUND

On December 14, 2015, Ms. Sineneng-Smith was sentenced to 18 months in prison for two counts of Encouraging and Inducing Illegal Immigration for Private Financial Gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i); two counts of Mail Fraud in violation of 18 U.S.C. § 1341; and two counts of Willfully Subscribing to a False Tax Return in violation of 26 U.S.C. § 7206(1). *See* ECF No. 262; *see also* ECF No. 6. Ms. Sineneng-Smith was also sentenced to 3 years of supervised release and 6 months of home confinement. *See* ECF No. 262. The Court further imposed a $600 special assessment fee and a $15,000 fine on Ms. Sineneng-Smith and ordered her to pay restitution in the amount of $43,550. *See id.*

Ms. Sineneng-Smith remained free on bail pending her appeals which extended through Supreme Court review and reversal of a Ninth Circuit order. The case was remanded to this Court on February 2, 2021 and Ms. Sineneng-Smith was ordered to surrender on October 4, 2021. *See* ECF No. 356.

On September 14, 2021, Ms. Sineneng-Smith moved for an extension of her voluntary surrender date from October 4, 2021 to March 7, 2022. *See* ECF No. 358. Ms. Sineneng-Smith argued that her age and health conditions put her at risk for severe symptoms or death from COVID, so she sought an extension of her surrender date until "uncertainties and risks" related to COVID became clearer. *See id.* at 8. The Court denied Ms. Sineneng-Smith's motion, finding that it was not clear that extending her voluntary surrender date was going to put her in a better position than she was at the time of her motion. *See* Order, ECF No. 366 at 2. The Court cited the fact that "FCI Dublin has seen as few as one or even zero active COVID-19 cases among inmates over the last few weeks." *See id.* Ms. Sineneng-Smith surrendered on October 18, 2021 in compliance with a two-week extension the Court granted due to Ms. Sineneng-Smith's unforeseen difficulties in making arrangements for her properties. *See* Order, ECF No. 366 at 2.

On April 6, 2022, Ms. Sineneng-Smith moved for compassionate release. Ms. Sineneng-Smith argues that her age—74—and her health conditions—aortic and mitral valve

2

1  regurgitation, borderline hypertension, hypercholesterolemia, and H. pylori infection—put her at
2  greater risk for severe symptoms or death resulting from COVID. *See* Motion, ECF No. 371
3  at 29–31. Further, Ms. Sineneng-Smith argues that the rise of the highly transmissible COVID
4  omicron variant and its sublineages pose serious threats, particularly in the context of an open-air
5  dormitory like FCI Dublin. *See id.* at 16–20, 30. Ms. Sineneng-Smith argues that the BOP and FCI
6  Dublin show little preparedness for further COVID waves, including because of a lack of testing,
7  nonsensical vaccination data, overpopulated facilities, and unvaccinated officers. *See id.* at 20–27.
8  In response, the Government argues that the number of COVID cases at FCI Dublin is low, and the
9  fact that Ms. Sineneng-Smith has received a COVID vaccine and booster lowers her risk of adverse
10 consequences from the virus. *See* Opposition, ECF No. 375 at 8–11. Further, the Government
11 argues that the seriousness of Ms. Sineneng-Smith's offense conduct and the fact that she has served
12 only around a quarter of her sentence weighs against compassionate release. *See id.* at 11–12.

## II. LEGAL STANDARD

Ms. Sineneng-Smith's motion is governed by 18 U.S.C. § 3582(c)(1)(A), which provides in relevant part as follows:

> (c) **Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed

3

>   under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides the following factors:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established for—
>
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>   (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
>   (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>
>   (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

> (5) any pertinent policy statement—
>
> > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> >
> > (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

For motions for compassionate release filed by the defendant, U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 is not binding but may inform a district court's discretion. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

### III.    DISCUSSION

Ms. Sineneng-Smith seeks compassionate release under § 3582(c)(1)(A)(i). In order to grant the requested relief under the legal standard articulated above, the Court must: (1) find that the administrative exhaustion requirement is satisfied; (2) find that extraordinary and compelling reasons warrant a reduction in sentence; and (3) consider the factors set forth in 18 U.S.C. § 3553(a).

#### A.    Administrative Exhaustion

A defendant has met the administrative exhaustion requirements of § 3582(c)(1)(A) where (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" 18 U.S.C. § 3582(c)(1)(A). Ms. Sineneng-Smith provides a November 8, 2021 letter to the warden at FCI Dublin requesting the filing of a motion for compassionate release. *See* ECF No. 371-2. The Government does not dispute that Ms. Sineneng-Smith has shown administrative exhaustion. *See* Opposition, ECF No. 375 at 4–5. The Court finds that Ms. Sineneng-Smith has met the administrative exhaustion requirement of § 3582(c)(1)(A).

### B.  Extraordinary and Compelling Reasons

Ms. Sineneng-Smith argues that there are extraordinary and compelling reasons for her release because of her health conditions in light of the COVID pandemic. *See* Motion, ECF No. 371 at 13–27, 29–31. Ms. Sineneng-Smith argues that due to her health conditions—hypertensive heart disease without heart failure, aortic and mitral regurgitation, hypercholesterolemia, a history of subarachnoid hemorrhage, and H. pylori infection—she has multiple risk factors for severe COVID complications. *See* Motion, ECF No. 371 at 29–30 (citing ECF No. 371-1; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; https://www.cdc.gov/genomics/disease/fh/FH.htm). Ms. Sineneng-Smith further argues that as a 74-year-old, her chances of being hospitalized or dying from COVID are many times that of someone between 18 and 29 years old according to the CDC. *See* Motion, ECF No. 371 at 29–30 (citing CDC, *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group* (updated Mar. 28, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html). Additionally, Ms. Sineneng-Smith argues that BOP is not equipped to provide elderly inmates like her with adequate medical care, particularly in the midst of the COVID pandemic. *See id.* at 30–31. Ms. Sineneng-Smith points to the fact that she has not received a second booster, even though the CDC recommends it for individuals over 50 years of age. *See* Reply, ECF No. 377 at 1. Ms. Sineneng-Smith argues that her chances of contracting COVID are particularly high in BOP custody and at FCI Dublin, particularly given the lack of accurate testing and vaccination statistics, overpopulated facilities, open-air dormitories, and the rise in the omicron COVID variant and its sublineages in Alameda County. *See* Motion, ECF No. 371 at 13–17.

In response, the Government argues that the existence of COVID, which "poses a general threat to every non-immune person in the country," is not enough to meet Ms. Sineneng-Smith's burden for showing "extraordinary and compelling reasons" for her release. *See* Opposition, ECF No. 375 at 7. Further, the Government argues that chronic but manageable medical conditions are insufficient. *See id.* at 7. While the Government indicates that the combination of chronic conditions and the pandemic might be sufficient for compassionate release, the Government argues

6

1    that Ms. Sineneng-Smith still has not met the standard here. *See id.* at 7–8. The Government argues
2    that COVID rates at Dublin FCI and in Alameda County are low. *See id.* at 8. Further, the
3    Government argues that Ms. Sineneng-Smith has received comprehensive medical care since her
4    arrival at FCI Dublin. *See id.* at 9–10 (citing Opposition, ECF No. 375, Ex. 1). Additionally, the
5    Government argues that Ms. Sineneng-Smith has been fully vaccinated. *See id.* And she appears
6    to be in good health based on her medical records. *See id.* The Government argues that courts have
7    denied similar compassionate release motions based on the COVID pandemic, and the emergence
8    of new variants like Omicron does not change courts' analysis that the pandemic does not provide
9    extraordinary and compelling reasons for an inmate's early release. *See id.* at 10–11.

10   The Court finds that Ms. Sineneng-Smith has not met her burden for showing that there are
11   extraordinary and compelling reasons for her release. The COVID pandemic is not sufficient on its
12   own to show that there are extraordinary and compelling reasons to release a particular inmate,
13   especially now that the intensity of and risk related to the pandemic appears to be significantly
14   diminished compared to many other points since its inception. Ms. Sineneng-Smith argues that the
15   omicron variant poses a significant threat, particularly with its highly transmissible sublineages. *See*
16   Motion, ECF No. 371 at 16–19. But even Ms. Sineneng-Smith states that omicron is less severe
17   than prior COVID variants. *See id.* at 17. Ms. Sineneng-Smith's only way of reconciling this fact
18   is by pointing to a general statement from Dr. Anthony Fauci suggesting that "the fact that you have
19   so many more cases might actually obviate the effect of its being less severe." *See id.* at 17 (citing
20   David Knowles, *Fauci: 'Dangerous' to Assume Omicron's Apparent Mildness Means the End of*
21   *the Pandemic is in Sight*, Yahoo News, Dec. 22, 2021, https://news.yahoo.com/fauci-dangerous-to-
22   assume-omicrons-apparent-mildness-means-the-end-of-the-pandemic-is-in-sight-
23   215540152.html). Such a vague statement, presented context-free, does little to avoid the fact that
24   the United States is in a period of relative safety at the present time regarding COVID. The Court
25   has also considered the very recent rise of infections in the past week due to a new sub-variant. But
26   the Court is unaware of an increasing hospitalization rate among vaccinated people.
27   Ms. Sineneng-Smith's age and medical conditions provide some support for her release. *See*
28   Motion, ECF No. 371 at 29–30 (citing CDC, *Risk for COVID-19 Infection, Hospitalization, and*

7

*Death By Age Group* (updated Mar. 28, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html). However, the Court finds that this evidence is insufficient to meet Ms. Sineneng-Smith's burden on a compassionate release motion. The Court agrees with the Government that Ms. Sineneng-Smith's history of medical treatment since she entered FCI Dublin suggests that she has had adequate medical treatment and has kept her health conditions under control. *See* Opposition, ECF No. 375, Ex. 1. Ms. Sineneng-Smith indicates that some of her symptoms have worsened, but there is no indication that this is a result of her being at FCI Dublin, or that her symptoms would not have worsened elsewhere. Nor is there any indication that any of her conditions have gotten so bad that she cannot be treated at FCI Dublin, or that she is not able to provide self-care at the facility. *See* U.S.S.G. § 1B1.13 n.1 § A.2 (extraordinary and compelling circumstances where a medical condition "substantially diminishes the ability of the defendant to provide self-care"); *Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

The CDC has indicated that some of Ms. Sineneng-Smith's health conditions may lead to more severe COVID symptoms. But Ms. Sineneng-Smith's health conditions are significantly less serious than the conditions defendants suffered from in many of the cases cited by Ms. Sineneng-Smith. *See, e.g.*, *United States v. Jacques*, No. 16–20759, 2021 WL 3422356, at *2 (E.D. Mich. Aug. 5, 2021) (defendant had spinocerebellar ataxia and perirectal wounds with fistula and "[w]hile the government contends [defendant] receives adequate medical treatment, the medical records reveal a contrasting story"); *United States v. Wheelock*, No. 13–136 (01) (MJD), 2021 WL 2143136, at *2 (D. Minn. May 26, 2021) (defendant had medical conditions including Type-2 Diabetes and severe atherosclerosis to both legs that "substantially diminish[ed] his capacity for self-care in prison"); *United States v. Magnuson*, No. 15–50095–JLV, 2020 WL 7318109, at **2–3, *5 (D.S.D. Dec. 11, 2020) (defendant suffered from severe obesity and type-2 diabetes such that "the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished"); *see also United States v. Miller*, No. 17 CR 404, 2020 WL 7641289, at *2 (government conceded defendant had shown extraordinary and compelling reason for a sentence reduction). While the Court sympathizes with Ms. Sineneng-Smith, particularly given her age and

8

1 her chronic conditions, the case law does not suggest that Ms. Sineneng-Smith's conditions and the
2 corresponding risk of consequences from COVID are sufficient to constitute extraordinary and
3 compelling reasons for her release.

4 Ms. Sineneng-Smith argues that because she has not received a second COVID booster, she
5 is being unnecessarily exposed to risk from the pandemic. *See* Reply, ECF No. 377 at 1–2. While
6 this is some evidence that Ms. Sineneng-Smith's medical care at FCI Dublin has been lacking, the
7 Court does not find this to be sufficient to show that there are extraordinary and compelling reasons
8 for releasing Ms. Sineneng-Smith. Ms. Sineneng-Smith's evidence regarding the second booster is
9 a recommendation—not a "require[ment]," as Ms. Sineneng-Smith suggests—that people over the
10 age of 50 get a second booster, since there is evidence that the first booster mitigated the risk of
11 hospitalization and death from COVID. *See* Reply, ECF No. 377 at 1 (citing CDC, Media
12 Statement, *CDC Recommends Additional Boosters for Certain Individuals*, at
13 https://www.cdc.gov/media/releases/2022/s0328-covid-19-boosters.html). The Court is concerned
14 that Ms. Sineneng-Smith is not able to receive a second booster at FCI Dublin, particularly given
15 that it appears she would like to receive one. However, given the reduced severity of the omicron
16 variant and the fact that—as Ms. Sineneng-Smith indicates—there is evidence that a second booster
17 provides short-lived protection, Reply, ECF No. 377 at 1–2, the Court finds that Ms. Sineneng-
18 Smith's lack of access to a second booster is not sufficient to constitute an extraordinary and
19 compelling reason for her release. Further, the irregularities in publicly reported BOP and FCI
20 Dublin statistics regarding COVID testing and vaccinations appear to result from the lull in number
21 and severity of cases. The data does not indicate wholesale neglect by BOP and FCI Dublin
22 regarding COVID, particularly considering the surges in testing that took place during prior waves
23 of the virus. *See* Motion, ECF No. 371 at 20.

24 Ms. Sineneng-Smith also argues that a series of sexual assaults by FCI Dublin officers
25 against inmates—allegedly leading to the nickname "Rape Club"—weighs in favor of her release.
26 *See id.* at 8. Ms. Sineneng-Smith provides no briefing connecting the sexual assault at FCI Dublin
27 to her own experience at the facility. While the Court sympathizes with Ms. Sineneng-Smith as an
28 elderly woman in a potentially dangerous environment, Ms. Sineneng-Smith has failed to adequately

1    demonstrate why the sexual assaults at FCI Dublin provide extraordinary and compelling reasons
2    for *her* release. Ms. Sineneng-Smith does not connect FCI Dublin's notorious reputation to her
3    experience at the facility, and she can point to no case authority where a court granted compassionate
4    release based on similar circumstances.

5    Based on the above reasoning, the Court finds that Ms. Sineneng-Smith has failed to
6    demonstrate extraordinary and compelling reasons for her release.

### C. § 3553(a) Factors

The Court next considers the § 3553(a) factors. Ms. Sineneng-Smith argues that since she has completed 25% of her sentence, she is eligible for home confinement under the BOP's Cares Act authority. *See* Motion, ECF No. 371 at 28. Further, Ms. Sineneng-Smith argues that while the sentencing court was concerned about deterrence, due to COVID, her sentence has been far more onerous than Judge Whyte could have anticipated when he sentenced her in 2015. *See id.* Additionally, Ms. Sineneng-Smith argues that short sentences are known to have a strong deterrent effect for white collar offenders—and recidivism for elderly female defendants is low. *See id.* at 28–29. Ms. Sineneng-Smith also argues that her offense conduct was nonviolent, and she does not represent a danger to the community. *See id.* at 31.

In response, the Government argues that the fact that Ms. Sineneng-Smith has only served around 25% of her sentence weighs against her release—particularly when she was sentenced to a below-guidelines sentence in the first place. *See* Opposition, ECF No. 375 at 11–12. The Government further points to Judge Whyte's description of her conduct as "serious" and indicating that "some deterrence is necessary to make clear that she cannot engage in conduct of this type." *See id.* at 12 (citing ECF No. 318 at 23:7–14).

The Court finds that the § 3553(a) factors weigh against Ms. Sineneng-Smith's release. The "history and characteristics of the defendant" support leniency, since Ms. Sineneng-Smith is an elderly woman with no criminal history, and therefore unlikely to recidivate or represent a danger to her community. *See* 18 U.S.C. § 3553(a)(1). However, as the Government points out, Judge Whyte considered the "nature and circumstances of the offense" to be grave and that a serious sentence was warranted for deterrence purposes. *See* 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A)–(B).

1   Further, Judge Whyte's sentence of 18 months already reflects considerable leniency toward Ms.
2   Sineneng-Smith, since it is a fraction of what Judge Whyte could have sentenced Ms. Sineneng-
3   Smith under the Guidelines. *See* 18 U.S.C. §§ 3553(a)(3) (sentencing factors include "the kinds of
4   sentences available"); 18 U.S.C. §§ 3553(a)(4) (sentencing factors include "the kinds of sentence
5   and the sentencing range established" by the Guidelines). Ms. Sineneng-Smith's point that COVID
6   has made her sentence more onerous than what Judge Whyte could have anticipated is not well-
7   taken. *See* Motion, ECF No. 371 at 28. Ms. Sineneng-Smith fails to point to any case authority
8   indicating that an inmate's sentence should be recalculated based on how "onerous" it was given
9   unforeseen historical developments like a public health emergency. If that were the law, then every
10  prisoner's sentence would need a haircut after the last several years.

11  Further, the fact that Ms. Sineneng-Smith has only served around a third of her time weighs
12  against her release. *See, e.g.*, *United States v. Furaha*, 445 F.Supp.3d 99, 103 (N.D. Cal. 2020).
13  Ms. Sineneng-Smith cannot point to a single case where a court has granted compassionate release
14  given a similar posture. Ms. Sineneng-Smith points to out-of-circuit compassionate release cases
15  where defendants had served a portion of their sentences significantly longer than the approximately
16  one-third of her sentence Ms. Sineneng-Smith has served—in addition to other material differences,
17  like debilitating medical conditions. *See Miller*, 2020 WL 7641289, at *1 (defendant had served
18  half of sentence); *Wheelock*, 2021 WL 2143136, at *2 (defendant had served 60% of sentence);
19  *Magnuson*, 2020 WL 7318109, at *2, *5 (defendant had served 74% of sentence and suffered from
20  severe obesity and type-2 diabetes in addition to hypertension); *United States v. Raymonde*,
21  No. 11–cr–00490–RBJ, 2021 WL 5014499 (D. Colo. Oct. 28, 2021) (reducing sentence from 216
22  to 188 months but declining to release inmate where at least 57% of his sentence had been served);
23  *United States v. Fields*, No. 12–cr–20274, 2020 WL 7225775, at *1 (E.D. Mich. Dec. 8, 2020)
24  (defendant had served over 60% of sentence).

25  Based on the above reasoning, the Court finds that the § 3553(a) factors do not support Ms.
26  Sineneng-Smith's release.

27  / / /
28  / / /

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Ms. Sineneng-Smith's motion for compassionate release is DENIED.

Dated: May 2, 2022

_____
BETH LABSON FREEMAN
United States District Judge